Filed 7/8/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| ERNEST J. FRANCESCHI, JR., | B267719 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS154331) |
| v. | |
| FRANCHISE TAX BOARD et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County, Joanne B. O'Donnell, Judge.  Affirmed.

Ernest J. Franceschi, Jr., in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Diane S. Shaw, Senior Assistant Attorney General, Stephen Lew, Supervising Deputy Attorney General, and Matthew C. Heyn, Deputy Attorney General, for Defendants and Respondents.

_____

Ernest J. Franceschi, Jr. (Franceschi) petitioned the superior court for a writ directing the then-serving members of the California Franchise Tax Board (FTB)—Betty Yee, Jerome E. Horton, Michael Cohen, sued in their official capacities only—to cease publishing his name on the FTB's list of the state's "Top 500" income tax debtors (the List). In his petition, Franceschi argued that publication of his name on the List violates his right to privacy. The FTB's members demurred to the petition, arguing in the main that (1) Franceschi could not state a legally viable cause of action because publication of his name on the List did not violate his privacy rights and (2) even if he could state a viable privacy claim, the doctrine of res judicata barred his petition—Franceschi had previously sought redress in federal court for having his name placed on the List, but the district court dismissed the action with prejudice for failure to state a claim. The trial court agreed on both grounds and sustained the demurrer. As Franceschi did not seek leave to amend his petition, the trial court dismissed the action with prejudice. In addition, because it found the action to be "frivolous and groundless," the trial court sanctioned Franceschi in the amount of $5,000.

On appeal, Franceschi challenges both the dismissal of his petition and the sanctions award. As discussed in more detail below, we hold that the petition was barred by the doctrine of res judicata. As that issue is determinative, we need not and do not reach the issue of whether Franceschi's petition stated a claim (or could be amended to state a claim) for violation of his privacy rights. We also hold that the trial court did not abuse its discretion in sanctioning Franceschi. Accordingly, we affirm the order.

## BACKGROUND

Section 19195 of the Revenue and Taxation Code requires the FTB to publish the List at least twice each year. (Rev. & Tax Code, § 19195, subd. (a).) Under section 494.5 of the Business and Professions Code, when a state licensing agency, such as the Department of Motor Vehicles, receives a delinquency list containing the name of a taxpayer to whom the agency has issued a license, that agency is required to suspend the taxpayer's license. (Bus. & Prof. Code, § 494.5, subds. (a)(1)-(2) & (b)(4).) The State

2

Bar of California is exempt from the mandatory suspension requirement but may recommend the suspension of a license if an attorney's name is included on the List. (Bus. & Prof Code, § 494.5, subd. (a)(3).) Franceschi is an attorney licensed to practice in California.

## I. Franceschi's first action regarding the List

In February 2014, Franceschi received a "notice of public disclosure of tax delinquency" from the FTB, advising him that he owed over $242,000 in taxes and, that unless he corrected this delinquency by March 17, 2014, the FTB might add his name, his address, his occupational and professional licenses, and the amount owed to the FTB's public website—that is, put his name on the List. The FTB's notice further advised Franceschi that the inclusion of his name on the List might result in the denial or suspension of various licenses pursuant to Business and Professions Code section 494.5.

### A. *Franceschi's complaint*

On March 14, 2014, Franceschi filed a complaint in federal district court seeking declaratory and injunctive relief (the First Action). The First Action was brought against the then-serving members of the FTB and the Director of the Department of Motor Vehicles. The gravamen of the complaint was that Franceschi's name should not have been put on the List and, by so doing, the defendants violated certain of his civil rights. More specifically, Franceschi asserted four claims for relief under title 42 United States Code section 1983 (section 1983): (1) violation of substantive and procedural due process rights secured by the Fourteenth Amendment to the United States Constitution; (2) violation of the Equal Protection Clause of the Fourteenth Amendment; (3) violation of the Privileges and Immunities Clause of the Fourteenth Amendment; and (4) violation of the prohibition against bills of attainder set forth in article I, section 10, clause I of the United States Constitution. The complaint in the First Action, however, did not assert any claim based on Franceschi's right to privacy under either the United States Constitution or the California Constitution. In the First Action, Franceschi sought to have Revenue and Taxation Code section 19195 and Business and Professions Code

3

section 494.5 declared unconstitutional and to prohibit defendants from "including [him] on the FTB list and/or suspending [his] California Driver's License."

### B. The dismissal of Franceschi's complaint

On August 4, 2014, after briefing and oral argument, the federal district court granted defendants' motion to dismiss for failure to state a claim, finding that Franceschi's complaint was defective on substantive legal grounds, not narrow procedural grounds. In a tentative order distributed to the parties in advance of the hearing, the district court indicated its willingness to grant Franceschi leave to amend his complaint. At the hearing, however, Franceschi declined this invitation, stating that "he did not believe he could amend his complaint to plead additional facts that would correct what the district court found to be legal deficiencies in his claims." As a result, the district court dismissed the complaint with prejudice and entered judgment in favor of the defendants.

## II. Franceschi's second action regarding the List

### A. Franceschi's petition

On March 18, 2015, Franceschi petitioned the superior court for a writ of mandamus (the Second Action). As with the First Action, Franceschi sued the then-current members of the FTB. As with the First Action, Franceschi premised the petition on the fact that, pursuant to Revenue and Taxation Code section 19195 and Business and Professions Code section 494.5, his name had been placed on the List. Accordingly, Franceschi sought the same relief as in the First Action; specifically, Franceschi sought to have those code sections declared unconstitutional—this time under the California Constitution—and to prohibit respondents from "publishing [his] name on the FTB 'Top 500' list of the largest state income tax debtors." However, the reason for the requested relief in the state court petition differed from that in the federal court complaint—the Second Action was premised solely on Franceschi's right to privacy under the California Constitution. (See Cal. Const., art I, § 1.)

## B.    *The dismissal of Franceschi's petition*

Respondents demurred to the petition, arguing, inter alia, that the doctrine of res judicata barred the petition.  In response, Franceschi did not dispute that the Second Action involved the same parties as in the First Action, rested on the same basic facts as the First Action, was based on the same primary right—to be free from having his name placed on the List—and sought the same relief.  Instead, Franceschi argued that had he brought his mandamus/privacy claim in the First Action, the federal district court would not have exercised supplemental jurisdiction because the claim was based on complex issues of state law.

In an order dated August 24, 2015, the trial court, inter alia, rejected Franceschi's arguments against the application of the res judicata doctrine and did so for two reasons.  "First, a litigant cannot avoid the impact of the rule against splitting causes of action by choosing to file the first action in a tribunal of limited jurisdiction, such as the federal district court.  [Citation.]  There is no reason [Franceschi] could not have brought his . . . Section 1983 claims against Respondents in California state court and joined his petition for mandamus relief with those claims.  His election to file the Section 1983 claims in federal court renders his subsequent mandamus petition in California a prohibited attempt to split his cause of action.  [Citation.]  Second, [Franceschi] asserts that forcing him to join his petition for mandamus to his federal suit only to have it then dismissed without prejudice under . . . Section 1376(c) would have required an 'idle act' of him, in contravention of the maxims of jurisprudence.  [Franceschi's] invocation of the maxims of jurisprudence to excuse what was clearly an effort on his part to secure a 'second bite at the apple' if his Federal Court action failed is unpersuasive and distasteful."

Because Franceschi's attempt to split his claims between his federal and state actions rendered the Second Action "frivolous and groundless," the trial court sanctioned Franceschi in the amount of $5,000.  As an "experienced litigator," Franceschi, in the words of the trial court, had "no excuse" for not knowing that the Second Action was barred by the doctrine of res judicata:  "[Franceschi's] filing of his first action in a court

of limited jurisdiction (the Federal District Court) when he could have filed an action in California court that would have encompassed all of his claims, suggests a premeditated effort on [Franceschi's] part to reserve a second bite at the apple in the event his Federal Court case was unsuccessful."

## DISCUSSION

### I. Standards of review

#### A. *De novo review for a demurrer*

A petition for a writ is subject to a demurrer. (Code Civ. Proc., § 1089; *Rodriguez v. Municipal Court* (1972) 25 Cal.App.3d 521, 526.)

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213.) Accordingly, in considering the merits of a demurrer, "the facts alleged in the pleading are deemed to be true, however improbable they may be." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

#### B. *Abuse of discretion for imposition of monetary sanctions*

Traditionally, we review a trial court's order imposing sanctions for abuse of discretion. (*20th Century Ins. Co. v. Choong* (2000) 79 Cal.App.4th 1274, 1277.) "Where . . . a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan*

6

(1986) 42 Cal.3d 308, 316.)  To the extent we engage in statutory interpretation, our review is de novo.  (See, e.g., *Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1176.)

## II.     The Second Action is barred by the doctrine of res judicata

Where an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California law will determine the res judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right.  (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954–955, disapproved on other grounds in *White v. Ultramar, Inc*. (1999) 21 Cal.4th 563–565.)

Under California law, ""'"[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy."'"" (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797.)  "Res judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding." (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.)  Res judicata bars the litigation not only of issues that were actually litigated in the prior proceeding, but also issues that *could have been litigated* in that proceeding. (*Busick v. Workmen's Comp. Appeals Bd*. (1972) 7 Cal.3d 967, 975.)  "A predictable doctrine of *res judicata* benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.'" (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 897.)

For purposes of applying the doctrine of res judicata, the phrase "cause of action" has a precise and particular meaning:  The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced.  (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co*. (1993) 5 Cal.4th 854, 860.)

7

As explained by our Supreme Court, California's res judicata doctrine and its definition of "cause of action" is based upon the primary right theory:

"The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] . . .

"As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' [Citation.]

"The primary right theory . . . is invoked . . . when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681–682.)[1] In short, under California law,

---

[1] In contrast, the federal courts utilize a transactional analysis; i.e., two suits constitute a single cause of action if they both arise from the same "'transactional nucleus of facts'" (*Derish v. San Mateo–Burlingame Bd. of Realtors* (9th Cir. 1983) 724 F.2d 1347, 1349, overruled on other grounds in *Marrese v. American Academy of Orthopaedic Surgeons* (1985) 470 U.S. 373 as noted in *Eichman v. Fotomat Corp*. (9th Cir. 1985) 759

8

the significant factor guiding the application of the doctrine is whether the "cause of action" is for invasion of a single primary right; whether the same facts are involved in both suits is not conclusive. (*Agarwal v. Johnson*, *supra*, 25 Cal.3d at p. 954.)

The doctrine not only precludes re-litigation of claims resolved in a prior action, but it also precludes litigation of claims that could have been brought in the prior action but were not. As our Supreme Court has stated, "The law abhors a multiplicity of actions . . . . [A] party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion." (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393.) "'This principle is fundamental and has been consistently applied by our courts.'" (*Panakosta, Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 634.)

In other words, the doctrine of res judicata goes beyond the four corners of the operative pleading in the prior action: "If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (*Warga v. Cooper* (1996) 44 Cal.App.4th 371, 377–378.)

A.       *The decision in the First Action was final and on the merits*

"Full faith and credit must be given to a final order or judgment of a federal court." (*Levy v. Cohen* (1977) 19 Cal.3d 165, 172; Code Civ. Proc., § 1908.) A dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.) for failure to state a claim is regarded by federal courts as a judgment on the merits. (*Federated Department Stores v. Moitie* (1981) 452 U.S. 394, 399, fn. 3; *Boccardo v.*

---

F.2d 1434, 1437) or a single ""core of operative facts."" (*Shaver v. F. W. Woolworth Co.* (7th Cir. 1988) 840 F.2d 1361, 1365.)

9

*Safeway Stores, Inc.* (1982) 134 Cal.App.3d 1037, 1042.)  Here, the dismissal with prejudice of the First Action was for Franceschi's failure to state a claim and, as such, it was a judgment on the merits.

### B.     *The First and Second Actions Involved the Same Parties*

In both the First Action and the Second Action, Franceschi sued the then-serving members of the FTB.  In other words, in both actions, Franceschi sued the FTB.  As a result, the parties in both actions are the same.

### C.     *The First and Second Actions Involved the Same Primary Right*

Although the First and Second Actions involve different legal theories, they were based on the same primary right—that is, Franceschi's (alleged) right not to have his name and other personal information placed on the List.

On appeal, Franceschi effectively concedes that he asserted the same primary right against the same parties in both the First and Second Actions.  Instead, he argues that the primary right analysis is largely irrelevant in this instance:  "the question of whether a federal judgment will be res judicata on a state law claim turns not on whether the [state] claim flows from [the] primary right [asserted in the federal action], but on whether the federal court would have exercised supplemental jurisdiction over the claim."  (Italics omitted.)  Franceschi maintains that the federal district court in the First Action would not have exercised supplemental jurisdiction, because the Second Action was a mandamus proceeding involving the right to privacy under the California Constitution; as a result, the federal district court "would have been required to dismiss" Franceschi's privacy claim had he asserted it in the First Action.  We are not persuaded by Franceschi's argument.

The rule in California is that "'[i]f . . . the court in the first action would *clearly* not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would *clearly* have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.'"  (*Koch v. Hankins* (1990) 223 Cal.App.3d 1599, 1605 [quoting § 25, commente of Restatement (Second) of Judgments], italics added; *Merry v. Coast*

10

*Community College Dist.* (1979) 97 Cal.App.3d 214, 229 [same].) Franceschi, however, failed to ask the federal district court to exercise supplemental jurisdiction over his mandamus/privacy claim; he simply assumed that it would decline to do so. As a result, we must now consider whether Franceschi's assumption was justified, whether it was "clear" that the federal district court would decline to exercise supplemental jurisdiction. As discussed below, we hold that it was by no means clear that the federal court would have refused to consider the mandamus/privacy claim; in fact, it is likely that the district court would have exercised supplemental jurisdiction.

Although federal court jurisdiction is generally limited to claims presenting a federal case or controversy or disputes between diverse parties, federal courts may exercise supplemental jurisdiction over related state law claims that "form part of the same case or controversy." (28 U.S.C. § 1367(a); see *Mine Workers v. Gibbs* (1966) 383 U.S. 715, 725 [jurisdiction extends to state claims sharing "common nucleus" of fact with federal claims]; see also *City of Los Angeles v. County of Kern* (2014) 59 Cal.4th 618, 622.) "[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." (*Mine Workers*, at p. 725.) If, however, "it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." (*Id*. at pp. 726–727.) In addition, a federal district court may decline to exercise supplemental jurisdiction over a claim if "the claim raises a novel or complex issue of State law." (28 U.S.C. § 1367(c)(1).)

We believe that the federal district court in the First Action would have exercised supplemental jurisdiction over Franceschi's mandamus/privacy claim for several reasons.

First, the Second Action grew out of the same set of operative facts as that giving rise to the First Action—the placement of Franceschi's name and other personal information on the List.

Second, given the number and weight of the section 1983 claims asserted in the First Action—procedural due process, substantive due process, equal protection, violation of the Privileges and Immunities Clause, and violation of the prohibition against bills of attainder—it is unlikely that the lone state law claim in the Second Action would have predominated over the federal claims, let alone substantially predominated over them.

Third, the mandamus/privacy claim does not present a particularly novel or complex issue of state law, either substantively or procedurally. With regard to the substance of Franceschi's privacy claim, federal district courts routinely exercise their discretion so as to resolve both federal civil rights claims brought under section 1983 and state law claims brought pursuant to the right to privacy under the California Constitution. (See, e.g., *Doe v. Beard* (C.D.Cal. 2014) 63 F.Supp.3d 1159 [disclosure of content's of prisoner's medical file]; *Olivera v. Vizzusi* (E.D.Cal. Nov. 15, 2010, CIV. 2:10-1747 WBS GGH) [2010 WL 4723712] [disclosure of police officer's personnel records]; *Blanco v. County of Kings* (E.D.Cal. 2015) 142 F.Supp.3d 986 [improper strip search at county jail].) Indeed, the right to privacy claim would have dovetailed nicely with Franceschi's other Fourteenth Amendment claims. (See *In re Crawford* (9th Cir. 1999) 194 F.3d 954, 958 [Fourteenth Amendment protects "'individual interest in avoiding disclosure of personal matters'"].) In other words, if Franceschi had brought all his claims at once in the First Action—both the section 1983 claims and the right to privacy claim—the complaint in the First Action would have been entirely consistent with accepted practice.

As for the procedural fact that Franceschi brought the Second Action as a mandamus claim, it would not have been an "idle act" for Franceschi to bring such a claim in the First Action. While federal courts are properly cautious about exercising supplemental jurisdiction over a state law mandamus claim, there is no iron rule prohibiting the exercise of such jurisdiction. Indeed, the opposite is true—Congress has given federal courts the discretion to hear mandamus claims. As the United States Supreme Court has stated, "There is *nothing* in the text of [28 U.S.C.] § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record

12

review of a state or local administrative determination.  Instead, the statute generally confers supplemental jurisdiction over '*all* other claims' in the same case or controversy as a federal question, without reference to the nature of review.  Congress could of course establish an exception to supplemental jurisdiction for claims requiring deferential review of state administrative decisions, but the statute, as written, bears *no* such construction." (*City of Chicago v. International College of Surgeons* (1997) 522 U.S. 156, 169, second italics added.)

Given this legislative license, federal courts, including the Ninth Circuit, have consistently recognized that a district court may exercise supplemental jurisdiction over mandamus claims.  (See *Clark v. Yosemite Community College Dist.* (9th Cir. 1986) 785 F.2d 781, 786, fn. 5 ["claim involving federal constitutional rights may be joined to a California mandamus action"]; *Manufactured Home Communities, Inc. v. City of San Jose* (9th Cir. 2005) 420 F.3d 1022, 1027, fn. 6 [same].)  And, in fact, federal courts have regularly applied California mandamus law.  (See, e.g., *Academy of Our Lady of Peace v. City of San Diego* (S.D.Cal. 2011) 835 F.Supp.2d 895, 902 [denying dispositive motion on petition pursuant to Code Civ. Proc., § 1094.5]; *Tonsing v. City and County of San Francisco* (N.D.Cal. Jan. 22, 2010, C 09–01446 CW) 2010 WL 334859 [same]; *Selvitella v. City of South San Francisco* (N.D.Cal. May 25, 2011, C 08–04388 CW) 2009 WL 2169860 [bifurcating trial of petition pursuant to Code Civ. Proc., § 1094.5 from civil rights claims]; *In re Lazar* (Bnkr. C.D.Cal. Aug. 28, 1997, LA 96–01575–SB) 1997 WL 33420089 [granting trustee's petition for writ of mandate under Code Civ. Proc., § 1094.5]; *Kucharczyk v. Regents of University of California* (N.D.Cal. 1996) 946 F.Supp. 1419, 1438–1444 [granting summary judgment to the defendant on plaintiff's mandamus claims].)

In short, we reject Franceschi's argument that although the First and Second Actions are similar, they are fundamentally different because one of those actions happens to be a state law mandamus claim.  We reject Franceschi's argument because the First and Second Actions arise out of a shared set of facts, they involve the same parties, and, perhaps most critically, the same primary right.  Moreover, Franceschi has argued in

13

a wholly conclusory manner that the federal district court would have been "required" to dismiss his mandamus/privacy claim had he brought it in the First Action solely because a "mandamus claim is inherently different from garden variety state law contract or tort claims." As discussed above, it is far from clear that the district court would have declined to exercise jurisdiction over Franceschi's mandamus/privacy claim.

The simple fact of the matter is that Franceschi gambled and lost—he believed that it was "reasonably clear that [his] mandamus claim could not have been litigated in federal court concurrently with [his] federal constitutional claims." In other words, at the time he filed the First Action, he knew he had a mandamus/privacy claim, but deliberately elected not to pursue it. The only remaining question is whether Franceschi should be sanctioned for his gamble.

## III. The trial court did not abuse its discretion in sanctioning Franceschi

After sustaining Respondents' demurrer without leave to amend, the trial court sanctioned Franceschi in the amount of $5,000 pursuant to section 19714 of the Revenue and Taxation Code. Under section 19714, "[w]henever it appears to the State Board of Equalization or any court of record of this state that proceedings before it under this part have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in the proceedings is frivolous or groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies, a penalty in an amount not in excess of five thousand dollars ($5,000) shall be imposed." In imposing sanctions against Franceschi, the trial court found the petition to be both "frivolous and groundless."

An action "should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment— or *when it indisputably has no merit—when any reasonable attorney would agree that the [action] is totally and completely without merit*." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, italics added.) There is nothing in the record below to suggest that the Second Action was brought to harass the FTB. As a result, our focus is on whether Franceschi's gamble—his decision to assume that the federal district court would

14

necessarily decline to exercise supplemental jurisdiction—was a reasonable one. We do not believe that it was.

A litigant with both federal and state law claims that are related may hedge his or her bets in any number of ways, but not by splitting his or her claim between two different actions. As the court in *Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 454–455, explained: "The initial choice by the plaintiff to file suit in federal court will not necessarily result in splitting his cause of action, because the federal court may well exercise pendent jurisdiction over the nonfederal claim. However, when the federal court has been requested to and has declined to exercise pendent jurisdiction over the nonfederal claim, the plaintiff is presented with a new choice. He may proceed to trial on the federal claim or, usually, he may elect to dismiss the federal claim without prejudice [citation] and litigate both claims in the state court [fn. omitted] [citations]. . . . [¶] . . . [O]nce the federal court has declined to exercise pendent jurisdiction over the state claim, if the plaintiff then elects to proceed to trial and judgment in the federal court, his entire cause of action is either merged in or barred by the federal court judgment so that he may not thereafter maintain a second suit on the same cause of action in a state court." To force a plaintiff to make such choices is essential to the efficient administration of justice. Indeed, a "contrary rule would invite manipulation." (*Id.* at p. 455.)

Franceschi's conduct here raises more questions than it answers. First, why did he not ask the federal district court to exercise supplemental jurisdiction? He had much to lose by not doing so. California courts have held that where a plaintiff makes no attempt to have a federal court exercise supplemental jurisdiction over a related state law claim, and then later files that state law claim in state court, such claims are barred by res judicata and the related prohibition against claim splitting. (See *Mattson v. City of Costa Mesa*, *supra*, 106 Cal.App.3d at pp. 449, 454–455 [discussing *City of Los Angeles v. Superior Court* (1978) 85 Cal.App.3d 143 and *Ford Motor Co. v. Superior Court* (1973) 35 Cal.App.3d 676].)

15

Second, why did Franceschi bring the First Action in a court of limited jurisdiction when he could have brought both his section 1983 claims and his mandamus/privacy claim in a state court action? It is well established that "[a] section 1983 claim may be brought in California state courts." (*Clark v. Yosemite Community College Dist.*, *supra*, 785 F.2d at p. 786.) Indeed, California courts have long held that a writ of mandate is an appropriate remedy for the enforcement of a civil right. (See *Hardy v. Stumpf* (1974) 37 Cal.App.3d 958, 961, *Wrather-Alvarez etc., Inc. v. Hewicker* (1957) 147 Cal.App.2d 509, 511.) Such questions are more than a little troubling given that Franceschi is an experienced litigator, one who has been practicing continuously since 1984.

The trial court's decision to sanction Franceschi for his gamble was not an abuse of discretion because a reasonable attorney looking at the applicable law and the shared facts in the First and Second Actions would not have instituted the Second Action after the First Action was dismissed. As explained by one court, "a litigant cannot avoid the impact of the rule against splitting causes of action by choosing for his first foray a tribunal of limited jurisdiction." (*City of Los Angeles v. Superior Court*, *supra*, 85 Cal.App.3d at p. 151.) In other words, the trial court's finding that the Second Action was a "premeditated effort on [Franceschi's] part to reserve a second bite at the apple in the event his Federal Court case was unsuccessful," was both reasoned and reasonable. Because the trial court did not exercise its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice, we affirm the award of sanctions.

**DISPOSITION**

The order is affirmed.  Respondents are to recover their costs on appeal.

CERTIFIED FOR PUBLICATION.


                                JOHNSON, J.


We concur:


    CHANEY, Acting P. J.


    LUI, J.