Filed 11/4/20  Martin v. Wells Fargo Bank CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RENEE' L. MARTIN,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK, N.A., as Trustee,<br><br>　　　Defendant and Respondent. | A154963<br><br>(Solano County<br>Super. Ct. No. FCS049659) |

　　　Appellant Renee' Martin brought suit against both the servicer of her home mortgage loan and respondent Wells Fargo Bank, N.A., the owner of the loan, asserting the defendants had improperly denied her a loan modification through a federal mortgage relief program in 2012, which ultimately culminated in the loss of her home through foreclosure.  The trial court sustained a demurrer without leave to amend on the ground of res judicata, based upon a prior judgment issued against Martin in a lawsuit she had previously filed in federal district court against the loan servicer.  Martin now appeals, arguing the trial court erred in applying res judicata.

　　　We affirm.

1

# BACKGROUND

## A.    The Allegations of the First Amended Complaint

Martin initiated this suit on September 28, 2017.  Her operative pleading, the first amended complaint for damages and equitable relief, alleged she filed suit as a result of unlawful conduct concerning her residential mortgage loan by the alleged servicer of her loan, Select Portfolio Servicing, Inc. (SPS), and the alleged owner of her loan, Wells Fargo Bank N.A. as Trustee for the Certificateholders of Morgan Stanley ABS Capital, Inc. Trust 2005-WMC3, Mortgage Pass-Through Certificates, Series 2005 WVC3 (Wells Fargo).[1]

She alleged in a preliminary statement she "was offered a Trial Period Plan, which she performed on, by paying the trial period payment for more than two years," but "[d]espite this fact, Defendant[s] never offered [her] a permanent [loan] modification consistent with the Trial Period Plan, began rejecting Plaintiff's payments and ultimately sold [her] home at foreclosure." She also alleged that SPS and Wells Fargo were acting in an agency relationship when this occurred.[2]  What then followed were more specific factual allegations.

---

[1]  We refer to the trust as "the mortgage trust."

[2]  Captioned under the heading, "AGENCY ALLEGATIONS," she alleged on information and belief in paragraph 8 "that at all times herein mentioned, each of the Defendants were acting as the agent, servant, employee, partner, co-conspirator, and/or joint venturer of each of the remaining Defendants, and was acting in concert with each remaining Defendant in doing the things herein alleged, and, additionally has inherited any violations and/or the liability of their predecessors-in-interest, and has also passed on liability to their successors-in-interest, and at all times was acting within the course and scope of such agency, employment, partnership, and/or concert of action."

Martin alleged her home loan was refinanced in 2004, and then in April 2011 her lender (WMC Mortgage Corp.) assigned the beneficial interest in the deed of trust to respondent Wells Fargo.

Thereafter, on September 1, 2012, a representative from SPS allegedly contacted her and advised her SPS would be taking over the loan. Martin allegedly advised the individual she was seeking a modification of the loan and was advised to submit a complete application to SPS.

She alleged that in October 2012, another representative from SPS contacted her and advised her of a new federal loan modification program (through the Department of Justice), and recommended she apply through the program for a modification. On or about November 9, 2012, SPS allegedly informed her that her loan modification request had been approved and the trial payment would be $1,093.56.

Thereafter, on November 15, 2012, SPS allegedly sent her a Trial Period Plan (TPP) offer. The TPP offer stated, "If you complete this Trial Period Plan by making all payments as outlined below, any past due late fees will be waived, interest and advances that we paid on your behalf will be added to your principal balance, and your loan will be brought up to date. We will then permanently reduce your principal balance by the amount of $172,828.37." In addition, it stated, "After you make all trial period payments on time, and if you continue to meet all of the eligibility requirements of this modification program, your mortgage will be permanently modified." And it advised her, "[p]lease continue to make payments in the amount noted in the Trial Period Plan until you receive your permanent modification documents from us."

Martin alleged that, to accept the offer, she was required to make the first TPP payment by December 1, 2012, and she did so; she also alleged that

she "accepted the trial plan and made each trial payment, in full and on time."

Then, on February 8, 2013, after completing the three trial payments, she alleged she contacted SPS and spoke to a representative who advised her of the terms of her permanent loan modification (2 percent for the first five years, 3 percent for the sixth year and 3.5 percent for the remaining loan term) and "advised [Martin] that she would be receiving the final modification any day."

She alleged that she continued to make loan payments in the trial payment amount while awaiting the "final modification."

Over the next few months she allegedly continued to inquire with SPS about the status of her loan until June 24, 2013, when she received a letter from SPS stating she was no longer eligible for the federal loan modification "because she had purportedly not returned the permanent modification documents to SPS." She alleged she had not received any permanent loan modification documents, however. She alleged that after that, she repeatedly tried to clear the matter up with SPS, while continuing to make monthly payments at the trial amount ($1,093.56) and awaiting permanent loan modification documents until April 2015 when SPS inexplicably began rejecting her payments. This led to collection calls "at all hours of the day," the details of which her allegations elaborated upon, eventually followed by the foreclosure on her home.

Based on these allegations, Martin asserted five causes of action.

Her first cause of action was for breach of contract. She did not specifically allege the existence of a contract, but in substance alleged that a contract had been formed through the TPP offer, and her acceptance of the offer by making the trial payments up to and until the time SPS began

4

rejecting her payments.  She alleged the defendants "never sent [her] a permanent modification which is consistent with the November 2012 Trial Period Plan offer and which complies with the U.S. Department of Justice mortgage settlement program."  And she alleged she had been "damaged as a result of both Defendants' breach, by submitting approximately $40,000 in payments to Defendant which did not result in the final permanent modification which [she] was supposed to receive," as a result of which accumulated fees were added to her loan, her home was foreclosed upon, and her credit damaged.

Her second cause of action was for violation of Civil Code section 2923.7, a statute that requires a mortgage servicer to "promptly establish a single point of contact" for a borrower who requests a foreclosure prevention alternative and "provide to the borrower one or more direct means of communication with the single point of contact."[3]  (Civ. Code, § 2923.7,

---

[3]  The statute further provides that:

(b) The single point of contact shall be responsible for doing all of the following: [¶] (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options. [¶] (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application. [¶] (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative. [¶] (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any. [¶] (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

"(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

subd. (a).) This cause of action alleged, "Defendant's representatives failed to ensure that [she] was considered for all modifications offered through SPS," because "Defendant never sent [her] a permanent modification which is consistent with the November 2012 Trial Period Plan offer and which complies with the U.S. Department of Justice mortgage settlement program." And she alleged, pursuant to Civil Code section 2924.12, subdivision (a), that "if a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of section . . . 2923.7" and that "[a]ny injunction shall remain in place until the mortgage servicer has corrected and remedied the violation."

Her third cause of action was for negligence, alleging the defendants "negligently handl[ed] [her] loan account and permanent loan modification documents" and "failed to ensure [she] was considered for all modifications offered through SPS." She alleged, further, that "SPS was clearly negligent in the handling of [her] Trial Period Plan payments, processing of the loan modification application, and finalizing the permanent modification," and that SPS's negligence was attributable to Wells Fargo. She alleged damages identical to those for her breach of contract claim.

Her fourth cause of action was for wrongful foreclosure, alleging the defendants "refus[ed] to provide [her] the permanent modification and then

"(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

"(e) For purposes of this section, 'single point of contact' means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." (Civ. Code, § 2923.7)

6

[sold] [her] Property at foreclosure, despite [her] having performed on a Trial Payment Plan which should have resulted in a permanent modification which would have saved [her] home from foreclosure." She sought consequential damages and punitive damages.

Her fifth and final cause of action was for quiet title, seeking to quiet title in her name as of the date her property was sold at foreclosure.

**B. The Prior Lawsuit**

In August 2016, Martin had filed a lawsuit in federal district court against SPS (in pro per) that was resolved against her in March 2017, about seven months before she filed the present lawsuit. Wells Fargo was not a party to that prior case.

Although some of the allegations in her prior lawsuit were different from those in the present lawsuit, the factual basis for her prior lawsuit overlapped considerably with that of the present lawsuit. In the prior suit, she alleged all of the same core facts about her dealings with SPS concerning her attempted loan modification through the DOJ program, the TPP offer, her trial payments, the rejection of her payments and the threatened foreclosure. In particular, she alleged that she "applied for the Department of Justice Program and complied with all the requirements of a three month trial, and should have been given the permanent modification on March 1, 2013." She also alleged, repeatedly, that "the property is not in default," including because the debt "has been paid off through credits from government programs and by Plaintiff."

She also alleged facts that went beyond the scope of the present lawsuit. For example, she alleged SPS did not have legal authority to take any action with respect to her property because "SPS is neither the proper servicer or lender." She alleged SPS never intended to modify her loan but,

7

rather, acted with the sole purpose of intending to foreclose on her home through negligent misrepresentations and deceit. She also alleged "this loan does not exist[]," because it had not been properly transferred into the mortgage trust.

Her prior lawsuit asserted ten causes of action against SPS: (1) for violation of the Servicing of Mortgage Loans Procedures Act (12 U.S.C., § 2605); (2) violations of the U.S. Department of Justice and/or U.S. Department of Treasury (Modifications); (3) wrongful foreclosure (commenced); (4) violations of the California Homeowners Bill of Rights; (5) quiet title; (6) intentional infliction of emotional distress; (7) violation of the Fair Debt Collection Practices Act (15 U.S.C., § 1692); (8) violation of the "Pool Servicing Agreement" by which her mortgage was purportedly securitized and transferred into the mortgage trust; and (9) negligent misrepresentation. She also asserted a cause of action entitled "no contract," asserting that she and SPS had not entered into any agreements "other than Plaintiff believed SPS has legal rights to offer a modification for the loan," but that "SPS does [not] have any right to received payments . . . and has no right to foreclose" on her property.

The district court granted SPS's motion pursuant to Federal Rule of Civil Procedure section 12(b)(6) to dismiss her first amended complaint with leave to amend, on the ground she failed to allege facts sufficient to state any claim. It stated many reasons, including that she "does not allege anywhere that she actually signed the loan modification paperwork, or any facts showing that she is entitled to the reduced payment amount she is purportedly continuing to make."

Thereafter, on March 1, 2017, Martin's in pro per federal lawsuit was dismissed with prejudice pursuant to Federal Rule of Civil Procedure

8

section 41(b), because she failed after repeated court orders to file either an amended complaint or a notice of voluntary dismissal within the time permitted. The judgment was entered about seven months before she filed the present suit.

## B. The Demurrer

In support of its demurrer in the present action, Wells Fargo requested (and was granted) judicial notice of records from the prior suit. It demurred to the first amended complaint on multiple grounds, including on the ground Martin's claims were barred by res judicata and collateral estoppel.[4]

The trial court sustained the demurrer without leave to amend on the ground that Martin's claims are barred by res judicata. It ruled that her causes of action against Wells Fargo were, or could have been, raised and litigated in the prior federal action that had been dismissed with prejudice.

Judgment was entered and this timely appeal followed.

## DISCUSSION

### I.

### *Standard of Review*

" 'On review from an order sustaining a demurrer, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]" [Citation.] We may also consider matters that have been judicially noticed. [Citations.] 'If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.' [Citation.] If we find that an amendment could cure the defect, we conclude

---

[4] It also argued her claims were barred by the statute of limitations and/or were non-actionable for other reasons.

that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect.' " (*Dones v. Life Insurance Co. of North America* (Oct. 7, 2020, No. A157662) 55 Cal.App.5th 665 [2020 WL 5938398, at p. *5] (*Dones*).)

## II.

## *Analysis*

### A.    Legal Sufficiency of the First Amended Complaint

Res judicata (or claim preclusion) " 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) A federal judgment has the same preclusive effect in state court as it would have in a federal court. (*Younger v. Jensen* (1980) 26 Cal.3d 397, 411.) Here, Martin argues the trial court erred in applying res judicata for multiple reasons.

First, Martin argues there was no judgment on the merits, because her action was dismissed solely for failure to file an amended pleading. But the court dismissed her action under rule 41(b) of the Federal Rules of Civil Procedure, which authorizes an involuntary dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order," and specifically states that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . *operates as an adjudication on the merits*." (Fed. Rules Civ. Proc., § 41, subd. (b), italics added.) The dismissal order here did not state otherwise. So, pursuant to rule 41(b), it was an adjudication on the merits. Furthermore, the very reason Martin was required to file an

10

amended pleading is because the district court had sustained a motion to dismiss her claims under rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Such a dismissal "is regarded by federal courts as a judgment on the merits." (*Franceschi v. Franchise Tax Bd.* (2016) 1 Cal.App.5th 247, 259.)

Second, Martin argues she cannot be bound by the prior federal judgment because Wells Fargo was not a party to that lawsuit. But claim preclusion applies in a second suit "between the same parties *or parties in privity with them*." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896, italics added.) Elsewhere in her brief she appears to acknowledge this, contending alternatively that res judicata does not apply because Wells Fargo "cites no evidence, and makes no argument, [that] would conclusively show that SPS is in privity with [it]" such as to bar her claims on the basis of the federal court judgment. But from our review of her pleading, her claims against Wells Fargo are based entirely on SPS's conduct. There are no allegations Wells Fargo was independently at fault. "When a defendant's liability is entirely derivative from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one." (*DKN Holdings LLC v. Faerber*, *supra*, 61 Cal.4th at pp. 827-828.)

Were that not enough, there also is the nature of the alleged relationship between Wells Fargo and SPS. Martin alleges in paragraph 8 that SPS was Wells Fargo's agent (quoted in footnote 2, *post*, p. 2). She also alleges SPS was the servicer for the loan that Wells Fargo owned. "If the person or entity seeking preclusive effect was not a party to the first litigation, we must . . . focus on their relationship to the party and the subject matter of the litigation, asking whether their interests are *so close to*

11

*identical* that the nonparty should have reasonably expected to be bound by the prior judgment even though not a party." (*Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1163, review granted May 13, 2020, S261247.) That certainly seems to be the case here. (See, e.g., *Barnes v. Homeward Residential, Inc.* (N.D. Cal., Sept. 17, 2013, No. 13-3227 SC) 2013 WL 5217393, at p. *3 [home loan servicer named as a defendant in prior lawsuit held in privity with trustee on deed of trust and holders of the beneficial interest of deed of trust for purpose of applying res judicata in subsequent mortgage foreclosure dispute], vacated and remanded on other grounds, 635 Fed.Appx. 373 (9th Cir. Mar. 3, 2016).) But it is unnecessary to decide the question because Martin is the appellant in this case, with the burden to demonstrate—by means of an argument supported by legal authority—that the alleged relationship between SPS and Wells Fargo does *not* satisfy this standard. She has failed to do this. (See *Grappo v. McMills* (2017) 11 Cal.App.5th 996, 1006 [" 'A judgment or order of a lower court is presumed to be correct on appeal' " and "the burden is on [appellant] to demonstrate error"]; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 162 (*United Grand*) [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis' " including by " 'explain[ing] how [the law] applies in his case' "].)

Third, Martin argues res judicata does not apply because her claims in the first lawsuit were different, and involved different primary rights, including because the foreclosure sale was completed after she had filed her first lawsuit and was not at issue in that case. We disagree, both factually and legally.

As explained by our Supreme Court: "The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought *or the legal theory (common law or statutory) advanced*. [Citation.] As we explained in *Slater v. Blackwood* [(1975)] 15 Cal.3d [791,] 795: '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] *Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.* "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, *even though he presents a different legal ground for relief.*" [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798, italics added.)

Martin makes no attempt to demonstrate that each of the causes of action she asserted here involve a different primary right than the claims she previously asserted in her federal lawsuit against SPS. The fact she pled different legal causes of action in the prior action is not determinative. As explained by authority Wells Fargo cites: "the doctrine of res judicata goes beyond the four corners of the operative pleading in the prior action: 'If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.' "

(*Franceschi v. Franchise Tax Bd.*, *supra*, 1 Cal.App.5th at p. 259.)  Martin thus has failed to carry her burden on appeal of demonstrating error.  (See *Grappo v. McMills*, *supra*, 11 Cal.App.5th at p. 1006.)

What is more, based on our review of the pleadings in the prior case, her present claims *do* involve the same primary right as at least some of those prior claims:  that is, the alleged right to a permanent loan modification on the terms offered to her in the TPP.  Indeed, her second cause of action in the prior suit (entitled, "Violations of U.S. Department of Justice and/or U.S. Department of Treasury (Modifications)") made this explicit:  its sole allegation was that she "had performed to all the terms of the U.S. Modifications, including three months trial payments and all subsequent payments thereafter for nearly three years and *Defendant SPS failed to honor the modified payment terms*."  (Italics added.)  Similarly, her third cause of action for wrongful foreclosure alleged SPS "ha[s] a duty to investigate and ensure that Plaintiff's house was actually in fact in default," demanded monthly mortgage payments from her starting on December 1, 2012, and continuing until May 2015, until it began returning her payments, and then "intentionally commenc[ed] a wrongful foreclosure." "By this conduct," she alleged, "it is foreseeable that foreclosure would be inevitable, when payments made are not being accounted for."  (This third cause of action also directly refutes her argument that the foreclosure was not at issue in the first lawsuit.)  Likewise, her fourth cause of action for "Violations of California Homeowners Bill of Rights" alleged, "The Bill prohibits a recordation of a Notice of Default or a Notice of Sale or the conduct of a trustee's sale if a foreclosure prevention alternative has been approved," that SPS had offered a loan modification approved by the Department of Justice, that she had performed the terms it offered her, and

14

(among other things), "there is no default of any kind." These causes of action defy Martin's assertion that the TPP allegations in the prior lawsuit were merely "background" allegations, and that her claims "largely" pertained to SPS's alleged lack of authority.

The sole authority Martin cites for the proposition her prior lawsuit could not have preclusive effect involved a prior judgment that, unlike here, "rest[ed] upon a completely separate set of facts" than the current lawsuit. (*Sawyer v. First City Financial Corp.* (1991) 124 Cal.App.3d 390, 402; see, e.g., *Jenkins v. Pope* (1990) 217 Cal.App.3d 1292, 1299, fn. 3 [distinguishing *Sawyer*].) This lawsuit involves the same core set of factual allegations and alleged harm as Martin's prior lawsuit (at least with respect to some of her prior claims); Martin has simply repackaged some of her prior claims into different legal theories. (See *Jenkins*, at p. 1299, fn. 3 ["a primary right is defined by the harm suffered: Violation of a single primary right gives rise to only one cause of action, even if a plaintiff has various forms of relief or theories of relief available"]; *Gillies v. JPMorgan Chase Bank, N.A.* (2017) 7 Cal.App.5th 907, 914 [third lawsuit to prevent foreclosure was barred by res judicata because it implicated "the same primary right which appellant ha[d] always claimed," and affirming order sustaining demurrer without leave to amend].)

For these reasons, Martin has failed to demonstrate the trial court erred in rejecting her claims on the basis of res judicata.

Moreover, wholly apart from res judicata, Wells Fargo's respondent's brief addresses six reasons to affirm the demurrer ruling on alternative grounds. Martin did not address those other issues in her opening brief, she has not filed a reply brief, and the parties have waived oral argument. "[I]t is not this court's function to serve as [appellant's] backup counsel" by

15

furnishing a legal argument on her behalf. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546.) Her failure to contest these points is, in effect, a waiver of any and all arguments to the contrary. (See *Curtis v. Santa Clara Valley Medical Center* (2003) 110 Cal.App.4th 796, 803, fn.4 ["[a]lthough [respondents] address the issue of informed consent in their brief, [appellant] did not raise it in his opening brief, and he has not filed a reply brief. We therefore consider this issue to be waived"].) As the appellant, Martin has the burden of demonstrating reversible error, and by failing to rebut Wells Fargo's alternative grounds to affirm arguments she has not met that burden. Regardless whether the trial court erred in sustaining the demurrer on the basis of res judicata, Martin has waived any argument that the court's ruling should not be affirmed on alternative grounds.

## B.    Denial of Leave To Amend

This brings us, then, to Martin's request for leave to amend her complaint.

Because we have concluded Martin has waived the right to contest the alternative grounds upon which Wells Fargo contends the judgment should be affirmed, any attempt to amend her complaint to avoid the defense of res judicata would be futile and irrelevant. For this reason alone there was no abuse of discretion in sustaining Wells Fargo's demurrer without leave to amend.

We also conclude Martin has not carried her burden of proving a reasonable possibility that the defects in her complaint can be cured by amendment. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 319.) Although she requests an opportunity to amend her complaint, she does not address how any of her existing causes of action can be cured by an amendment, and it is

16

apparent they cannot, given the conclusive nature of the federal judgment entered against her.

She does argue, though, that the proceedings below deprived her of her federal and state constitutional rights to due process, and that Wells Fargo acted with unclean hands by "concealing" its identity and the fact it was in privity with SPS. She contends it "would be a 'miscarriage of justice'" to permit Wells Fargo to "operate under fraud and deceit," and that Wells Fargo "should not be allowed to enjoy the fruit of [its] misconduct by claiming now after SPS obtained a favorable judgment in the prior court and now Defendant in the present action wants to claim privy [*sic*] with SPS." But due process is not violated if the party against whom res judicata is asserted was bound by the prior judgment (see *Bernhard v. Bank of America Natl. Trust & Sav. Assn.* (1942) 19 Cal.2d 807, 812), and here there is no question that Martin was. There also is no legal or factual support for her contention Wells Fargo "concealed" its identity, and even construing Martin's argument as a contention she could amend her complaint to allege such facts, it would not change our analysis. Martin cites no authority that res judicata cannot be invoked by a litigant who is in privity with a party to a prior lawsuit but whose identity is unknown and/or "concealed." Nor could such circumstance, if proved, have deprived her of a full and fair opportunity to litigate her claims on the merits in the prior proceeding.

Finally, Martin also argues that her constitutional rights were violated because Wells Fargo's real estate agent "along with the police and locksmith barged into [her] home[] while [she] was inside and busted the locks to enter." Again construing this point as a request to amend her complaint, this assertion in no way relates to curing the defects of her first amended complaint (see *Dones*, *supra*, 2020 WL 593398, at p. *5) but rather is an

17

entirely new theory of liability, and so it does not demonstrate an abuse of discretion by the trial court in sustaining the demurrer without leave to amend. Furthermore, there are additional difficulties. Martin does not specify when the alleged incident took place and so we are unable to discern whether her claim is barred by the applicable statute of limitations. (See, e.g., *Eghtesad v. State Farm General Insurance Co.* (2020) 51 Cal.App.5th 406, 414-416 [no abuse of discretion in denying leave to amend to allege a cause of action that is time-barred].) She also does not specify whether this took place before the foreclosure sale, and so we also are unable to ascertain whether she was in lawful possession of the premises when this allegedly took place. Finally, even assuming Martin could allege she was in lawful possession when the alleged incident took place and the claim is not time-barred, she cites no legal authority that such actions by Wells Fargo, a *private* party, are actionable as a constitutional violation. "[T]here is nothing in the general rule of liberal allowance of pleading amendment which 'requires an appellate court to hold that the trial judge has abused his discretion if on appeal the plaintiffs can suggest no legal theory or state of facts which they wish to add by way of amendment.' [Citation.] The burden is on the plaintiffs to demonstrate that the trial court abused its discretion and to show in what manner the pleadings can be amended and how such amendments will change the legal effect of their pleadings." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1387-1388.) Martin's vague and conclusory assertions about Wells Fargo's purported actions are insufficient to meet that burden.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs.

18

_____
STEWART, J.


We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.


*Martin v. Wells Fargo Bank* (A154963)