Filed 11/6/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| VICTOR GUERRERO,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>　　　Defendant and Respondent. | A147507<br><br>(San Francisco City & County Super. Ct. No. CGC-14-539692) |

## I. INTRODUCTION

Victor Guerrero, a Mexican immigrant and aspiring California correctional officer, filed a federal action alleging discriminatory failure-to-hire against the California Department of Corrections and Rehabilitation (the CDCR), among other defendants. He pled federal and state law claims, but only his state claims allowed him to seek general damages.

The federal court dismissed Guerrero's state claims on Eleventh Amendment grounds, effectively limiting his potential money recovery to the equitable remedy of backpay. To recoup damages, Guerrero filed this action in superior court. After final judgment was entered in the federal action—in Guerrero's favor—the superior court dismissed his state claims under California claim preclusion principles.

On appeal, Guerrero now argues that federal law, not California law, governs the preclusive effect of the federal judgment. Under federal law, Guerrero contends, there is a well-recognized exception to claim preclusion rules where jurisdictional limitations in a prior suit blocked the plaintiff's request for complete relief, as was the case here. We

agree and shall reverse.

## II.  FACTS

### A. Background

Guerrero is among the many Americans who are popularly known as "Dreamers." He was brought from Mexico to the United States by his parents in 1990 at age 11.  In 1995, at age 15, he created a false Social Security number (SSN) to acquire a job, and used the made-up SSN until 2007, when he secured a legitimate SSN.  He became a United States citizen in 2011.

After Guerrero gained citizenship, he applied to become a correctional officer with the CDCR.  He passed the written and physical exams in the first stage of the CDCR's eligibility process and was placed on the eligibility list.  The second stage involved completing the CDCR's background investigation questionnaire.

Question 75 on the questionnaire presented a problem.  It asked, "Have you ever had or used a social security number other than the one you used on this questionnaire?" Guerrero answered "yes" and provided a supplemental explanation.  Based on that answer, the CDCR informed Guerrero he was no longer eligible to become a correctional officer.

Undaunted, Guerrero appealed to the State Personnel Board (the SPB), lost, and then reapplied to the CDCR in spring 2013.  He again passed the first stage of eligibility and moved on to the background investigation questionnaire.  Once again, he answered "yes" to question 75 and provided an explanation.  Ultimately, he was rejected again.  He appealed to the SPB, to no avail.

### B. Underlying Litigation

#### 1.    *Filing of the Federal Action*

After exhausting administrative remedies, Guerrero filed a complaint in federal district court on December 9, 2013 (the Federal Action), naming the CDCR, the SPB and various individuals as defendants.  That case alleged employment discrimination in violation of title VII of the Civil Rights Act of 1964 (Title VII) and California's Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) (FEHA); national origin discrimination in a state-conducted program in violation of Government Code section

2

11135; federal constitutional claims under section 1983 of title 42 of the United States Code for violation of the equal protection and due process clauses of the United States Constitution; and state constitutional claims for violation of the equal protection and due process clauses of article I, section 7 of the California Constitution.

By way of relief, Guerrero sought, inter alia, declaratory relief, injunctive relief (including reinstatement to the CDCR correctional officer hiring process), compensatory damages, and an award of attorney fees and costs. He bolstered this requested relief with claims for a writ of mandate under Code of Civil Procedure section 1085 barring further use of question 75; and a writ of administrative mandamus under Code of Civil Procedure section 1094.5 directing the CDCR and the SPB to set aside their decisions declaring him ineligible to be a correctional officer.

2.      *Dismissal of State Law Claims in the Federal Action*

As the Federal Action moved forward, Guerrero added specificity, filing a first amended complaint in January 2014 and then a second amended complaint in February 2014. On motions to dismiss the second amended complaint, the district court granted dismissal in part. The court rejected the defense's attack on the Title VII and federal equal protection claims; dismissed the federal due process claim as redundant in light of the more specific equal protection claim; and dismissed the state law claims on Eleventh Amendment grounds, without prejudice. (*Guerrero v. California Department of Corrections and Rehabilitation* (N.D.Cal. 2015) 119 F.Supp.3d 1065, 1068–1069 (*Guerrero I*), affirmed in part, reversed in part, and remanded *Guerrero v. California Department of Corrections and Rehabilitation* (9th Cir. 2017) 701 Fed.Appx. 613 (*Guerrero II*).)

The order of dismissal explained that "[b]ecause adjudication of plaintiff's California state-law claims in federal court would contravene the Eleventh Amendment, plaintiff's state-law claims against all defendants must be DISMISSED. These may be re-filed in state court." (*Guerrero v. California Department of Corrections and Rehabilitation* (N.D.Cal. May 7, 2014, No. C 13-05671 WHA) 2014 U.S.Dist. Lexis 63282, at pp. 15–16, citing *Pennhurst State School & Hospital v. Halderman* (1984)

3

465 U.S. 89, 106.)  Following issuance of this order, Guerrero amended his complaint one final time, filing a third amended complaint omitting the state law claims.  (*Guerrero I*, *supra*, 119 F.Supp.3d at p. 1069.)  As a practical matter, the dismissal of Guerrero's state law claims stripped him of the ability to seek damages in the Federal Action.  For monetary relief, he was left with only the equitable remedy of backpay.

Going into trial, Guerrero's third amended complaint presented only federal questions.  (*Guerrero I*, *supra*, 119 Fed.Supp.3d at p. 1069.)  In these surviving federal claims, the gist of Guerrero's theory was that "[d]efendants' disqualification of applicants who have previously used an SSN other than their own has an adverse and disparate impact on particular national origin minorities, such as Latinos, who seek to qualify for state employment."  Guerrero alleged that the CDCR, with the knowledge and active support of the SPB, was disproportionately disqualifying Latino correctional officer applicants by using question 75 to target formerly undocumented immigrants like himself.

3.      *Filing of the State Court Action*

In accordance with the district court's observation that the state law claims "may be re-filed in state court," Guerrero filed a complaint in San Francisco County Superior Court (State Court Action) while the Federal Action was still pending.  Once again, Guerrero named the CDCR and the SPB as defendants along with various individuals, and once again, he alleged failure-to-hire under a disparate impact theory based on the use of question 75.  It is undisputed that, factually, the allegations of discrimination in these parallel state and federal proceedings were virtual mirror images.

As a first order of business in the State Court Action, the trial court held a case management conference in which the parties agreed to a stay pending completion of the federal proceedings, but also agreed that, upon resumption of the State Court Action, any collateral estoppel or res judicata issues arising out of the anticipated federal judgment should be decided first.  Those issues were then briefed and scheduled for hearing at a time set far enough out on the calendar to trail the entry of judgment in the Federal Action.

4

### 4.    *Trial and Judgment in the Federal Action*

While the State Court Action was stayed, a bench trial took place in the Federal Action, which ended with a judgment for Guerrero on his Title VII claim, awarding much of the relief he sought, including reinstatement to the CDCR's correctional officer hiring process and $140,362 in backpay contingent on his successfully completing the CDCR training academy, plus an award of $1,237,024.82 in prevailing party attorney fees and $166,541.87 in costs. (*Guerrero v. California Department of Corrections and Rehabilitation* (N.D.Cal. June 16, 2016, No. C 13-05671 WHA) 2016 WL 3360638, at p. 35 (*Guerrero Fees Order*), vacated and remanded, *Guerrero II*, *supra*, 701 Fed.Appx. 613.)

Guerrero was not wholly successful in the Federal Action, however. (See *Guerrero Fees Order*, *supra*, 2016 WL 3360638, at pp. 35–37.) The district court found for the CDCR on Guerrero's federal equal protection claim under section 1983 (*Guerrero I*, *supra*, 119 F.Supp.3d at p. 1082), and, while holding that he had suffered discrimination individually, it rejected his claim that the CDCR's use of question 75 is categorically invalid. (*Id.* at p. 1081.) The court found that the detection of SSN misuse bears upon the CDCR's legitimate interest in maintaining the "integrity, honesty, and good judgment [of its] corrections officer[s]," and as a result, declined to enjoin its use so long as, going forward, the CDCR properly conformed the question to business necessity criteria established by the Equal Employment Opportunity Commission. (*Ibid.*) The ensuing judgment is now final, having been affirmed on appeal.[1]

_____

[1] In July 2017, a Ninth Circuit panel sustained the district court's finding of Title VII disparate impact liability against the CDCR, but reversed the judgment with respect to the SPB, holding that "[i]n its purely adjudicatory role in this case, there is no evidence that [the SPB] discriminated against or interfered with the CDCR's relationship with Guerrero, nor is [the SPB] in a position analogous to [a state agency that had become] 'so entangled with the operation of California's local school districts that individual districts are treated as " 'state agencies' " for purposes of the Eleventh Amendment.' [Citation.] Therefore, [the SPB] cannot be liable under a third party disparate impact theory." (*Guerrero II, supra,* 701 Fed.Appx. at pp. 618–619.) Because the fees and costs awards

5

5.     *Dismissal of the State Court Action*

Following completion of the Federal Action, the trial court in the State Court Action heard argument on the preclusive effect of the federal judgment. On November 6, 2015, it issued an "Order on Res Judicata Effect of Federal Judgment" ruling that "this case should be dismissed and judgment entered against [Guerrero]" because "[u]nder California law including its primary rights doctrine . . . the same primary rights were at issue in the federal case . . . and in this case." It is from the adverse judgment entered upon this order that Guerrero now appeals.[2]

**III.     DISCUSSION**

**A. Standard of Review and Principles of Res Judicata**

We review a dismissal on grounds of res judicata de novo as an issue of law. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10.) Res judicata—law Latin for "a thing adjudicated"—is an umbrella term encompassing issue preclusion and claim preclusion, both of which describe the preclusive effect of a final judgment. As a general matter under the doctrine of claim preclusion, a final judgment on the merits bars parties or parties in privity from "successive litigation of the very same claim . . . as the earlier [action]." (*Taylor v. Sturgell* (2008) 553 U.S. 880, 892 (*Taylor*).) The driving principle behind the claim preclusion doctrine is that the parties have had a " 'full and fair opportunity to litigate' " claims alleged in the first action. (*Ibid.*, citing *Montana v. United States* (1979) 440 U.S. 147, 153–154.)

Unlike issue preclusion, which applies only to issues that were actually litigated, claim preclusion applies not just to what was litigated, but more broadly to what could have been litigated. Here, under what is sometimes known as the rule against "claim splitting," the doctrines of bar and merger do the work. (See Rest.2d Judgments (Second

___

were entered on an apportioned basis against both the CDCR and the SPB, the case was remanded to the district court for the limited purpose of reconsidering that apportionment. (*Id.* at p. 619.)

[2] While this appeal was pending, we granted a stipulated motion dismissing the SPB and the individual defendants, leaving the CDCR as the sole respondent.

Restatement), § 24.) "Merger" expresses the idea that, for a winning plaintiff, all claims the plaintiff did raise or could have raised merge into the judgment in his favor. (*Id.* § 18.) If the plaintiff attempts to litigate any of those claims again, the judgment itself serves as a defense. "Bar," on the other hand, refers to the related idea that a judgment for a winning defendant bars the plaintiff from litigating any claims he brought or could have brought in the prior suit. (*Id.* § 19.) This case involves the merger aspect of claim preclusion.

Together, the principles of issue and claim preclusion serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" (*Allen v. McCurry* (1980) 449 U.S. 90, 94), thereby shielding litigants from undue harassment and avoiding the substantial time and expense associated with repetitive litigation. (*Taylor*, *supra*, 553 U.S. at p. 892.) The reduction of duplicative proceedings also furthers the goals of convenience, efficiency and judicial economy—in one proceeding, the same trial court presides over discovery, motions, and a single trial. (*Allen*, *supra*, 449 U.S. at p. 94.) The rules of claim and issue preclusion protect the integrity of courts by fostering finality and minimizing the potential for conflicting judgments, which serves to promote public confidence in the judicial process. (See *Nevada v. United States* (1983) 463 U.S. 110, 128–129; see also Allan D. Vestal, *Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts* (1968) 66 Mich. L.Rev. 1723, 1723.)

## B. Applicability of Federal Law

The main issue Guerrero presents on appeal, described by the trial court as "the central problem here," is "which law provides the rule of decision for res judicata analysis." Do we apply California law or federal law?

The basic principles of claim preclusion are roughly the same under California and federal law, but there are some key differences. For example, while federal law defines a "claim" for purposes of claim preclusion using a transactional test, California law uses the older pleading term "cause of action" and defines it according to the

common law doctrine of primary rights.[3]  The more modern transactional approach has been adopted by the Second Restatement.  (See *id*. § 24.)  Although recent pronouncements from our high court have moved California law toward alignment with the overall approach to issue and claim preclusion in the Second Restatement, at least in the terminology we employ (see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824), some features of California claim preclusion law remain distinctive.  The primary rights doctrine is one such area.  (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 804; see *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 27–29.)

Guerrero argues that, in determining the preclusive effect of the judgment in the Federal Action, the trial court erroneously applied the California doctrine of primary rights.  He correctly points out that in *Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497 (*Semtek*), the United States Supreme Court held that federal common law controls the preclusive effect of a federal judgment.  The federal judgment in *Semtek,* to be sure, arose in a diversity case (see 28 U.S.C. § 1332), but the language of the opinion in that case is broad.  It states that the United States Supreme Court "has the last word on the claim-preclusive effect of all federal judgments."  (*Semtek, supra*, 531 U.S. at p. 507, italics omitted.)  If there were any doubt about the breadth of this holding, the high court removed it in *Taylor, supra,* 553 U.S. at page 892, which applies *Semtek* in a case where the judgment at issue was entered in a federal question case.  (See 28 U.S.C. § 1331; *Taylor*, at p. 891, citing *Semtek*, at pp. 507–508; see also Rest.2d Judgments, § 87

---

[3] "The federal courts utilize a transactional analysis; i.e., two suits constitute a single cause of action if they both arise from the same 'transactional nucleus of facts' [citation] or a single 'core of operative facts.'  [Citation.]  California follows the primary right theory of Pomeroy; i.e., a cause of action consists of 1) a primary right possessed by the plaintiff, 2) a corresponding primary duty devolving upon the defendant, and 3) a delict or wrong done by the defendant which consists in a breach of such primary right and duty.  [Citations.]"  (*Gamble v. General Foods Corp.* (1991) 229 Cal.App.3d 893, 898 (*Gamble*).)

["Federal law determines the effects under the rules of res judicata of a judgment of a federal court"].)

Although federal common law applies under *Semtek*, the ultimate rule of decision chosen in that case was the law of the state where the judgment-issuing federal court sat, a holding which effectively embeds state law into federal law unless some paramount federal interest calls for a departure from it. This aspect of *Semtek* is consistent with the conventional approach to conflict of laws in federal diversity cases,[4] but leaves open what to do in federal question cases, which present a very different choice-of-law problem.[5] While recognizing that "*Semtek* does not tell us what the rule of decision is when the federal judgment was on a federal question," the trial court went on to apply California law because it perceived no federal interest in the application of federal law. On this point, the court erred. Pockets of federal common law do exist, enunciated case-by-case, independent of state law.[6] They are rare, but *Taylor* quite clearly announces one. "The preclusive effect of a federal-court judgment is determined by federal common law," the high court held in *Taylor*. At first blush, that might seem like just a straightforward application of *Semtek,* calling for the application of state law incorporated into federal law, but the *Taylor* court goes further: "For judgments in federal-question cases[,] . . . federal courts participate in developing

---

[4] *Erie R. Co. v. Tompkins* (1938) 304 U.S. 64, 78–80; see *Klaxon Co. v. Stentor Co.* (1941) 313 U.S. 487, 496.

[5] See Paul J. Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision* (1957) 105 U. Pa. L.Rev. 797.

[6] *Texas Industries Inc. v. Radcliff Materials, Inc.* (1981) 451 U.S. 630, 640 ("There is, of course, 'no federal general common law.' [Citations.] Nevertheless, the Court has recognized the need and authority in some limited areas to formulate what has come to be known as 'federal common law.' [Citations.] These instances are 'few and restricted,' [citations] and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' [citation] and those in which Congress has given the courts the power to develop substantive law.").

'uniform federal rule[s]' of res judicata." (*Taylor, supra*, 553 U.S. at p. 891.)

We read the holding in *Taylor* as an unequivocal directive that federal claim preclusion law applies in this case, without reference to California law. Long before *Taylor*, many California cases recognized that "[a] federal court judgment has the same effect in the courts of this state as it would in a federal court." (*Martin v. Martin* (1970) 2 Cal.3d 752, 761; see also *Younger v. Jensen* (1980) 26 Cal.3d 397, 411; *Levy v. Cohen* (1977) 19 Cal.3d 165, 173; *Nathanson v. Hecker* (2002) 99 Cal.App.4th 1158, 1163; *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1452*; Merry v. Coast Community College Dist.* (1979) 97 Cal.App.3d 214, 222–223.) These cases now seem prescient. The CDCR reads them narrowly, arguing that federal law is relevant only to the extent consistent with California law, a notion taken from dicta in a footnote in a case that did not involve the preclusive effect of a federal judgment.[7] The argument is creative, and might have been plausible before 2008, but giving federal law such a subordinate role in the face of the high court's holding in *Taylor* strikes us as inconsistent with the supremacy clause. (U.S. Const., art. VI, cl. 2.)

Citing *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077 and several other cases which rely on California claim preclusion law,[8] the CDCR insists it has long been settled that when an action "is filed in state court and the defendants claim the suit is barred by a final federal judgment, California will determine the res

---

[7] *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 585, footnote 3.

[8] *Franceschi v. Franchise Tax Bd*. (2016) 1 Cal.App.5th 247, 259; *Gamble, supra,* 229 Cal.App.3d at page 898; *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 432–433. These cases nod in the direction of federal law by citing it for background principles (*Johnson*) or only to determine whether the judgment at issue was final and on the merits (*Gamble, Franceschi*), but then use California law to determine the ultimate preclusive effect of the judgment. For this "mix and match" approach, *Franceschi* and *Gamble* cite *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954, disapproved on another ground in *White v. Ultramar* (1999) 21 Cal.4th 563, 574, footnote 4, which applies California law to determine whether a prior federal judgment was " '[a] valid final judgment on the merits in favor of a defendant [and therefore] serves as a complete bar to further litigation on the same cause of action' " without any consideration of federal law or whether it might apply.

judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right." The CDCR also claims, without authority, that "[f]ederal law does not, and should not, govern the preclusion of state claims in state court against a state entity defendant." But none of the cases the CDCR relies upon as declarative of settled law addresses *Semtek,* either on its own terms or in light of *Taylor.* Guerrero criticizes the approach to federal-state choice-of-law issues in these cases as "haphazard." We would not put it that baldly since the ground has shifted in this area, and it often does not matter whether federal or state law applies in any event. But whatever explains the lack of precise attention to choice-of-law in the *Simi Valley* line of cases, we believe they fail to capture the high court's latest guidance.

The only California case we have found that takes account of the changed landscape following *Semtek*, correctly stating the rule announced in *Taylor*—oddly, without citing it, even though *Taylor* had been on the books by then for more than a year—holds that "where a prior federal judgment was based on *federal question* jurisdiction, the preclusive effect of the prior judgment of a federal court is determined by federal law." (*Louie v. BFS Retail & Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544, 1553, italics added (*Louie*).) We think *Louie* was right.[9]

---

[9] The highest appellate courts in other states that have explicitly addressed the question in a considered way have been unanimous in reaching the same conclusion *Louie* did. (*See Donnelly v. Eklutna, Inc.* (Alaska 1999) 973 P.2d 87, 92, fn. omitted [Where the prior federal judgment was in a case asserting claims under the federal Alaska Native Claims Settlement Act, the Alaska Supreme Court holds "we must look to federal law to determine the preclusive effect of the federal litigation. Otherwise, federal judgments would be subject to the uncertainties of state law wherever a litigant chose to bring a subsequent suit"]; *Ames v. JP Morgan Chase Bank, N.A.* (Ga. 2016) 783 S.E.2d 614, 618, citing *Taylor*, *supra*, 553 U.S at p. 891 [Supreme Court of Georgia holds, "[i]f the federal decision was rendered under the court's federal question jurisdiction, the uniform federal rules of preclusion declared by the United States Supreme Court are applied"]; *Garcia v. Prudential Ins. Co. of America* (Nev. 2013) 293 P.3d 869, 872, citing *Semtek*, *supra*, 531 U.S. at p. 507 and *Taylor*, *supra*, at 533 U.S. at p. 891 [Supreme Court of Nevada holds that "federal common law governs claim preclusion with respect

"Where a federal court, in a case brought under [federal] and state . . . laws, does not resolve any issue of the state . . . laws, the federal courts will dismiss the state claims without prejudice to their being filed in state court, even where the state . . . statutes incorporate the [federal law]." (*Louie,* at p. 1555.)  That was the case in *Louie*, which involved claims brought under the federal Americans with Disabilities Act (ADA) and its California statutory counterpart.  The federal consent decree there—which was, of course, a final judgment—barred injunctive and declaratory relief based on ADA violations, but expressly carved out damages claims based on state law.  (*Louie*, at pp. 1557–1558.)  Applying federal claim preclusion law, while recognizing that state law called for the same result (*id*. at p. 1554 ["we look to the preclusive effect under federal law, though we observe federal law is consistent with California law in this case"]), the court held that state law claims for damages remained available in a state action despite the consent decree.  (*Id.* at p. 1558.)  The same analysis applies here.

## C.   Jurisdictional Competency Exception

We agree with Guerrero that the trial court erred in applying California's primary rights doctrine, but that doctrine alone does not explain the court's ruling here.  Rather,

---

to a judgment by a federal court . . . . [¶] With regard to federal question cases, federal common law endeavors to develop a uniform rule of preclusion"]; see also *Wong v. Cayetano* (Hawai'i 2006) 143 P.3d 1, 16; *Silver Eagle Mining Co. v. State* (Idaho 2012) 280 P.3d 679, 682; *Reeder v. Succession of Palmer* (La. 1993) 623 So.2d 1268, 1271; *Brown v. Osier* (Maine 1993) 628 A.2d 125, 127.  Cf. *Paramount Pictures Corporation v. Allianz Risk Transfer* (N.Y. 2018) 96 N.E.3d 737, 742 (plurality) ["the Supreme Court has been unequivocal:  Though 'no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case,' the Court has 'long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes.' "].)  There was some debate among the New York Court of Appeal judges in *Paramount* about what the rule is where the federal judgment rests on both federal question and diversity jurisdiction (compare *Paramount*, at pp. 741 & fn. 3 (plur. opn.); *id*. at p. 749–750 (conc. opn. of Rivera, J.); *id*. at pp. 755–757 (dis. opn. of Wilson, J.)), but no judge questioned that where the federal judgment rests purely on federal question jurisdiction, federal common law governs its preclusive effect.

the court appears to have proceeded on the understanding that federal law recognizes an exception to claim preclusion that "salvages" Guerrero's state claims for damages in these circumstances, while California law does not. This, in our view, sets up a false conflict. Under section 26(1)(c) of the Second Restatement, claim preclusion does not apply where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief." (See *Marrese v. American Academy of Ortho. Surgeons* (1985) 470 U.S. 373, 382.)[10] There is no denying that the basis for the dismissal of Guerrero's state law claims for damages in the Federal Action, the Eleventh Amendment—which is jurisdictionally disabling in an Article III court, absent a waiver—was a limitation on "the subject matter jurisdiction" of the district court.[11] Contrary to what the trial court appears to have believed, this exception has been

_____

[10] See also section 26(1)(c), comment c(1) of the Second Restatement ("Where formal barriers existed against full presentation of claim in first action (Subsection (1)(c)). The general rule of § 24 [Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning 'Splitting'] is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.").

[11] *Freeman v. Oakland Unified School District* (9th Cir. 1999) 179 F.3d 846, 847 ("The Eleventh Amendment is a limit on federal courts' jurisdiction. [Citation.] Dismissals for lack of jurisdiction 'should be . . . without prejudice so that a plaintiff may reassert his claim in a competent court.' ").

13

recognized in both federal law and California law.[12]  Thus, claim preclusion does not apply here under either federal or California law.

Faced with a well-established claim preclusion exception, the CDCR attempts to offer a trump card.  According to the CDCR, under *Acuña v. Regents of University of California* (1997) 56 Cal.App.4th 639 (*Acuña*) there is, in effect, an exception to the exception.  Even where a plaintiff suffers the dismissal of state law claims in federal court under the Eleventh Amendment, the CDCR argues, *Acuña* holds that claim preclusion forecloses the pursuit of those claims in state court if, upon the federal court's prior dismissal, the plaintiff *elects* to continue pursuing federal claims in federal court, and then takes the surviving claims to judgment, rather than voluntarily dismissing everything and re-filing all claims in state court.  The trial court found *Acuña* to be "on point" and followed it, observing that plaintiff Acuña's state law claims were "dismissed on 11th Amendment grounds, just as here."  This, too, was error.

To unravel the problem, we must start with *Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441 (*Mattson*), on which *Acuña* relied.  In that case, the plaintiff brought a federal action asserting federal civil rights claims, invoking federal question

---

[12] Federal law—*Feminist Women's Health Center v. Codispoti* (9th Cir. 1995) 63 F.3d 863, 869 ("An exception to the general rule of claim preclusion exists where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of limitations on the subject matter jurisdiction of the courts.'  Rest.2d Judgments, § 26(1)(c)"); *Burgos v. Hopkins* (2d Cir. 1994) 14 F.3d 787, 790 ("where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, not by plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action"); see also *United States v. Tohono O'odham Nation* (2011) 563 U.S. 307, 328–329 (conc. opn. of Sotomayor, J.). California law—*Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170 ("[a]n important exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum," citing Rest.2d Judgments, § 26(1)(c)); see also *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 344.

jurisdiction, together with state law tort claims based on what was once known as pendent federal jurisdiction. (*Mattson,* at p. 444.)[13] The federal court dismissed the state law claims, and proceeded to try the federal claims, which resulted in a judgment for the defense. (*Mattson,* at p. 445.) While the federal action was still pending, but before entry of judgment, the state court dismissed the revived state claims on grounds of res judicata. (*Ibid.*) On appeal, the Court of Appeal affirmed under California claim preclusion law, interpreted in light of the Restatement First of Judgments (First Restatement), section 62 and the Fifth Tentative Draft of the Second Restatement (Tent. Draft. No. 5), sections 61 and 61.1. (*Mattson*, at pp. 448–450, 452–454.)[14]

The *Mattson* court described the circumstance presented there as one where the federal court "in the first action has discretionary jurisdiction and declines to exercise [it]." (*Mattson*, *supra*, 106 Cal.App.3d at p. 451.) That situation, the court said, is what may be described as the "state court-federal court pendent-jurisdiction problem." (*Ibid.*) While the First Restatement did not specifically deal with the issue, the court explained that "[s]ome effort has been made by the authors of the Restatement Second of Judgments, Fifth Tentative Draft, to deal with [it]." (*Mattson,* at p. 452.) After summarizing in detail pertinent Restatement principles—drawing primarily from comment j to the First Restatement, section 62, as carried forward in comment g, section 61 of the Second Restatement (Tent. Draft No. 5)—the court observed that, generally, a "plaintiff, having voluntarily brought his action in a court which can grant him only limited relief, cannot insist upon maintaining another action on the claim." (*Mattson,* at

---

[13] See *United Mine Workers of America v. Gibbs* (1966) 383 U.S. 715, 725 (pendent jurisdiction extends to state claims sharing "common nucleus" of fact with federal claims). The term pendent jurisdiction is now outdated. In 1990, Congress codified the judicial doctrines of pendent and ancillary jurisdiction, employing the term "supplemental jurisdiction." (28 U.S.C. § 1367.)

[14] The Fifth Tentative Draft of the Second Restatement was the immediate precursor to the Second Restatement, published in 1982, two years after *Mattson* was decided. Except for new section numbering and new letter designation of comments, there are no material differences between the Fifth Tentative Draft and the Second Restatement, as pertinent here.

15

pp. 448, 452.)

But *Mattson* must be read closely. The court was careful not to attach preclusive consequences to the mere act of filing state claims in federal court, for that would have had a "chilling effect" on plaintiffs' ability to take related federal claims into a federal forum. (*Mattson*, *supra*, 106 Cal.App.3d at p. 454.) Rather, the heart of the court's rationale was this: "The initial choice by the plaintiff to file suit in federal court will not necessarily result in splitting his cause of action, because the federal court may well exercise pendent jurisdiction over the nonfederal claim. However, *when the federal court has been requested to and has declined to exercise pendent jurisdiction over the nonfederal claim, the plaintiff is presented with a new choice*. He may proceed to trial on the federal claim or, usually, he may elect to dismiss the federal claim without prejudice [citations]. Once it is known that the federal court will not exercise pendent jurisdiction over the state claim, plaintiff's proceeding to trial in the federal court on the federal claim alone will necessarily result in splitting the plaintiff's cause of action, and that fact should be apparent to the plaintiff." (*Id.* at pp. 454–455, italics added.)

"In such circumstances," the *Mattson* court explained, "the rule that would best accommodate the rights of the plaintiff to fully litigate his claim and to invoke the jurisdiction of the federal court and the right of the defendant, the courts and the public to be free of multiple litigation of the same cause of action, is that once the federal court has declined to exercise pendent jurisdiction over the state claim, if the plaintiff then elects to proceed to trial and judgment in the federal court, his entire cause of action is either merged in or barred by the federal court judgment so that he may not thereafter maintain a second suit on the same cause of action in a state court. [¶] A contrary rule would invite manipulation. It would permit a plaintiff halfheartedly to request the federal court to exercise pendent jurisdiction, offer little resistance to any argument by the defendant against its exercise, and hope that the federal court would decline to exercise pendent jurisdiction and thereby reserve to the plaintiff a second chance to prevail in a state court action should he be successful in the federal court." (*Mattson*, *supra*, 106 Cal.App.3d at p. 455.)

16

*Acuña* extended the *Mattson* rule to a case where the plaintiff landed in federal court by removal, not by choice. The case began with a state court action asserting employment discrimination claims under the federal Age Discrimination in Employment Act (ADEA) and for race, ethnicity and age bias under FEHA. (*Acuña*, *supra*, 56 Cal.App.4th at pp. 643–644.) One of the defendants, the University of California, removed the action to federal court and brought a motion to dismiss on Eleventh Amendment grounds. (*Acuña,* at p. 644.) The plaintiff responded with his own motion to remand the FEHA claims to state court. (*Acuña,* at p. 644.) The motion to remand was granted (not the motion to dismiss) (*ibid.*), and the federal case proceeded to trial on the ADEA claim, which resulted in a plaintiff's judgment. (*Acuña,* at p. 644.) Seeking additional relief (punitive damages were not available on the ADEA claim), the plaintiff attempted to pursue his FEHA claims on remand in state court, but the court granted summary adjudication against him on res judicata grounds. (*Acuña,* at pp. 644–645.) Applying California law, the court held the federal and state claims were based on the same primary right—" 'the right to be free from employment discrimination' "—and that they were merged into the federal judgment and therefore foreclosed. (*Id.* at p. 649.)

We are not persuaded that *Acuña* is controlling. First of all, it is not clear to us that, as the *Mattson* court put the matter, the federal court in *Acuña* was requested to and declined to exercise its discretionary supplemental jurisdiction over state law claims. (*Mattson*, *supra*, 106 Cal.App.3d at p. 451.) Plaintiff Acuña's state law claims were dismissed on his own motion, presumably under rule 41(a) of the Federal Rules of Civil Procedure (28 U.S.C.), application for voluntary dismissal. Thus, he split his claims by choice, not under compulsion of a federal court's determination that it had no power to hear them.[15] Had there been an Eleventh Amendment dismissal, it would have triggered

---

[15] See *Harris v. Grimes* (2002) 104 Cal.App.4th 180, 188 (*Harris*) (*Mattson* does not apply where "federal court, instead of a party, splits a cause of action. . . . California's prohibition on splitting causes of action 'does not aid [a defendant when] it was not [the plaintiff] who made the decision to "split" causes of action between state and federal court. [The plaintiff] tendered the entire case to the federal court, which had pendent

section 26(1)(c) of the Second Restatement (§ 61.2(1)(c) of Tent. Draft No. 5), a claim preclusion exception neither *Mattson* nor *Acuña* cites or discusses. Because the dismissal in *Acuña* was based on the plaintiff's considered election to dismiss only some of his claims in federal court, the case falls comfortably within the *Mattson* rule. That is not the situation we have here. Guerrero's claims were dismissed on Eleventh Amendment grounds, which was not a discretionary disposition. If there was a tactical choice on this record, it was exercised by the CDCR—to waive Eleventh Amendment immunity, or to face claims for damages in a separate action in state court.

What must ultimately carry the day, however, no matter how *Acuña* is read, is that it predates *Semtek* and *Taylor*. *Mattson*, on which *Acuña* relies, has been both praised (see *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 525 (conc. opn. of Corrigan, J.) ["[t]he *Mattson* court carefully considered the applicable Restatement principles, and its reasoning was sound"]) and criticized (see *Harris*, *supra*, 104 Cal.App.4th at pp. 188–189 [declining to follow "two-decade old" *Mattson* rule as outdated in light of case law adopting a more recent, "widely endorsed pronouncement of the law" as reflected in the Second Restatement].) We are inclined to think *Harris* was correct about *Mattson*, albeit for somewhat different reasons,[16] but that is not the dispositive point here. Just as in

jurisdiction to determine the state causes of action but declined to exercise it. [Citations.] A federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court.' "); *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 286 (same).

[16] The *Mattson* court's analysis of the applicable restatement principles centers on section 61.1, comment e of the Fifth Tentative Draft of the Second Restatement, which became section 24, comment g of the Second Restatement. Structurally, section 24 (entitled "Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning Claim Splitting") is followed by section 25 (entitled "Exemplifications of General Rule Concerning Splitting"), which is followed in turn by section 26 (entitled "Exceptions to the General Rule Concerning Claim Splitting"). As carried over from the First Restatement, section 62, comment j, the explanatory language *Mattson* relies upon most heavily, which ultimately became section 24, comment g—concerning the consequences of a "plaintiff having voluntarily brought his action in a court that can only grant him limited relief"—is an illustration of the general rule in application. But the

*Louie*, "we look to the preclusive effect [of the judgment in the Federal Action] under federal law" (*Louie*, *supra*, 178 Cal.App.4th at p. 1559), and find it dispositive that neither *Mattson* nor *Acuña* has any foundation in federal law.  Accordingly, we conclude that Guerrero is free to pursue his state claims for damages in superior court.  We take no view on the extent to which, if at all, relitigation of *issues* implicated by those claims may be necessary.  The trial court should now proceed to make that determination after applying the doctrine of issue preclusion

## IV.  DISPOSITION

The judgment dismissing Guerrero's state claims is reversed and remanded for further proceedings consistent with this opinion.

---

Second Restatement makes clear that this illustrative scenario refers to the bringing of a subsequent suit within "the same system of courts."  Section 24, comment g; see, e.g., *Allstate Ins. Co. v. Mel Rapton, Inc*. (2000) 77 Cal.App.4th 901, 907 (claim preclusion aspect of res judicata applies to small claims court judgments).  Moreover, the Second Restatement adds, for the first time, a clarifying comment specifically addressing "special problems of state and federal competencies," section 25, comment e, which cross-references a new exception for situations where the initial claim was brought in a court with "limitations on . . . [its] subject matter jurisdiction . . . or restrictions on [its] authority."  Section 26(1)(c).  Upon consideration of sections 24, 25 and 26 of the Second Restatement, when read together—and notably the cross-referencing within these interrelated sections in the comment language accompanying them—it is apparent that the drafters took care to ensure that the general claim-splitting rule, in section 24, as illustrated in application, in section 25, dovetails with the jurisdictional competency exception, in section 26(1)(c), and that, as shown by comment e, section 25, this newly recognized exception limits the preclusive effect of federal judgments in state court.  Although the subtle interrelationship of these provisions is just as evident in the Fifth Tentative Draft as it is in the Second Restatement as published, *Mattson* fails to take it into account.

19

_____
Streeter, Acting P.J.

We concur:


_____
Tucher, J.


_____
Lee, J.*

* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A147507/*Guerrero v. California Department of Corrections & Rehabilitation*

Trial Court:                    San Francisco City & County Superior Court.

Trial Judge:                    Honorable Curtis E. A. Karnow.

Counsel for Appellant:          The Legal Aid Society—Employment Law Center,
                                Christopher Ho, Alexis Alvarez for Plaintiff and
                                Appellant.

Counsel for Respondent:         Kamala D. Harris, Attorney General, Dane R. Gillette
                                and Gerald A. Engler, Assistant Attorney General,
                                Miguel Neri and Jorge Aguilar II, Deputy Attorneys
                                General, for Defendant and Respondent.

A147507/*Guerrero v. Department of Corrections and Rehabilitation*