Filed 8/29/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT LACOUR<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>            v.<br><br>MARSHALLS OF CALIFORNIA, LLC, et al.,<br><br>        Defendants, Cross-complainants and Appellants. | A163920<br><br>(Alameda County Super. Ct. No. RG21084368) |

Plaintiff Robert LaCour appeals from a judgment in favor of Marshalls of California, LLC and certain affiliated entities (collectively Marshalls) in this action under the Labor Code's Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).  Marshalls cross-appeals.

Together, the appeal and the cross-appeal require us to address three main questions:  (1) Since, in Marshalls' reading, LaCour's notice of appeal specifically mentions only the order granting Marshalls' motion for judgment on the pleadings, is an earlier order that formed the predicate for the judgment appealable?  (2) Did trial court err in rejecting Marshalls' argument that LaCour's PAGA complaint was untimely?  And (3) did the trial court err in partially granting Marshalls' motion to strike on grounds of claim preclusion?

In answer to these questions, we hold that (1) LaCour's notice of appeal is sufficient to support an appeal of the adverse judgment against him

1

together with all preliminary orders that preceded it; (2) in light of the Governor's emergency order extending statutes of limitation in civil cases during the COVID-19 pandemic—an order we hold was constitutional—the trial court correctly ruled that LaCour's PAGA complaint was timely filed; and (3) the trial court erred in giving claim preclusive effect to a federal court judgment in a prior PAGA case. The judgment will be vacated and the case remanded for further proceedings.

## I. BACKGROUND

LaCour, a former Loss Prevention Specialist at a Marshalls store, filed this standalone PAGA action on January 4, 2021. Marshalls filed a demurrer arguing that, because LaCour's employment with Marshalls ended in May 2019, he had only a year and 65 days to bring a PAGA claim, and having missed that deadline, the PAGA action was untimely.

Marshalls also filed a motion to strike, arguing in the alternative that even if LaCour's action was timely filed, all allegations of Labor Code violations pre-dating November 17, 2020 must be stricken because PAGA claims against Marshalls through that date were released in the settlement of an earlier class and PAGA action. (See Order Approving Class Settlement *Rodriguez v. Marshalls of CA, LLC* (C.D.Cal., July 31, 2020, No. ED CV 18-1716-MWF (SPx)) 2020 WL 7753300.)[1] After approving the settlement as

---

[1] *Rodriguez* consisted of two cases that were consolidated for purposes of the settlement approval process. One case was a class action filed by plaintiff Alicia Rodriguez (C.D.Cal. No. CV 18-01716 MWF (SP)) alleging gender discrimination along with certain violations of California wage-and-hour laws based on "[Marshalls'] policy and practice of conducting security checks anytime its employees leave a store with a purse or a bag, without providing compensation for that time." The other case, filed by plaintiff Joan Paulino (C.D.Cal. No. CV 19-03618 MWF (Ex)), alleged the same wage-and-hour violations but asserted them under PAGA. Plaintiff Rodriguez's case

2

fair, reasonable, and adequate under federal class action standards, the district court entered judgment by consent and dismissed the action with prejudice. According to Marshalls, all of LaCour's PAGA allegations should be stricken under the doctrine of claim preclusion.

In response to the demurrer, LaCour argued that, under emergency rule 9 of the California Rules of Court, Appendix I (Emergency Rule 9), which was put into effect by the Governor during the pandemic, the otherwise applicable limitations period for filing a PAGA claim was extended by six months. And in response to the motion to strike, LaCour argued the *Rodriguez* settlement release is unenforceable because plaintiff Paulino had no authority to settle PAGA claims going beyond the factual basis of her pre-suit notice to the Labor and Workforce Development Agency (LWDA).

According to LaCour, plaintiff Paulino's LWDA notice covered only Labor Code violations for off-the-clock work during time employees spent undergoing an anti-theft bag check procedure at the end of their shifts. LaCour claimed that his pre-suit notice letter to the LWDA, in contrast, dealt with failure to reimburse uniform maintenance and other expenses, such as the costs of using personal phones and vehicles for work purposes, in addition to other kinds of claimed Labor Code violations not encompassed in Paulino's notice.

The trial court overruled Marshalls' demurrer and granted its motion to strike in part. The court ruled that Emergency Rule 9 was valid and tolled the time for LaCour to bring his PAGA claims. Having decided that LaCour's

was filed directly in federal court under federal diversity jurisdiction, and plaintiff Paulino's case was removed to federal court on the same jurisdictional basis. For simplicity, since both actions were resolved in a single judgment pursuant to a single settlement, we refer to them as *Rodriguez*.

PAGA claims were timely presented, the court ruled that he would be allowed to pursue those claims subject to a time cutoff in the *Rodriguez* release (i.e., only to the extent he sought to recover for Labor Code violations occurring after the effective date of the *Rodriguez* release).

The court rejected LaCour's argument that Paulino had no LWDA authority to settle claims encompassed by LaCour's LWDA notice. Noting that, in a footnote, Paulino's LWDA notice letter listed a variety of Labor Code provisions, including Labor Code section 2802—which provided the legal basis for LaCour's PAGA claims, even though, factually, her complaint dealt with off-the-clock work and the bag check policy—the court accepted Marshalls' argument that, as LWDA's proxy, Paulino had authority to settle.

Since Paulino had authority to settle on LWDA's behalf, and since judgment was entered in her case based on a court-approved settlement, the court ruled that the res judicata effect of the judgment in Paulino's case was co-extensive with the scope of the *Rodriguez* settlement release. And because the *Rodriguez* settlement release, by its terms, covers claims for the period December 27, 2017 through November 17, 2020, the court granted the motion to strike to the extent LaCour sought to pursue PAGA recovery for Labor Code violations prior to November 17, 2020.

Marshalls then answered the complaint, simultaneously filing a motion for judgment on the pleadings. In its motion for judgment on the pleadings, Marshalls argued that, since LaCour was not an employee of Marshalls at any time after November 17, 2019, he is not an aggrieved employee within the meaning of the PAGA statute and therefore has no standing to sue under our decision in *Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476. The court granted the motion. LaCour appealed from the ensuing judgment, and Marshalls cross-appealed.

4

### A. *Appealability*

Marshalls claims as a threshold matter that, in LaCour's notice of appeal, he states he is "only appealing the '[m]otion for judgment on the pleadings' and not the judgment itself or any other order issued by the trial court." On that premise, Marshalls argues that LaCour's appeal is designed as a partial appeal of a specific order preceding entry of judgment, and thus he has failed to appeal from the order of May 7, 2021, granting Marshalls' motion to strike in part. Because it was in the May 7, 2021 order that the trial court addressed the enforceability and scope of the *Rodriguez* settlement release, Marshalls argues, LaCour's appeal should be dismissed because his notice of appeal does not encompass the critical ruling he seeks to attack.

We reject this argument. Marshalls relies on the rule that, in a partial appeal from a specific portion of an appealable judgment, only those portions of the judgment that are identified in the notice of appeal are reviewable. (See *Gonzales v. R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798, 805; *American Enterprise, Inc. v. Van Winkle* (1952) 39 Cal.2d 210, 216.) But that rule has no applicability here. We are dealing with an appeal from a judgment, not from a selected piece of a judgment.

The record shows that, on September 10, 2021, the trial court entered both an order on Marshalls' motion for judgment on the pleadings and judgment on that order. While there is some ambiguity to LaCour's notice of appeal, the notice indicates he is appealing from a "judgment or order entered on" September 10, 2021.[2] We read notices of appeal liberally (Cal. Rules of

---

[2] In Paragraph 1 of the Form App-002 Notice of Appeal that LaCour filed, he checked the box "Other" and specified "Motion for judgment on the pleadings." Marshalls apparently reads that checked box to mean LaCour

Court, rule 8.100(a)(2)), and we construe LaCour's notice of appeal to signal his intent to seek review of the judgment under Code of Civil Procedure section 904.1, subdivision (a)(1).

Since LaCour seeks review of an appealable judgment, under Code of Civil Procedure section 906 all intermediate nonappealable orders related to the judgment are reviewable as well (see *Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1133), without any need to specify them in the notice of appeal (*Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 532). LaCour argues—and Marshalls does not dispute—that the relatedness criteria set out in Code of Civil Procedure section 906 are satisfied.[3] We agree and therefore conclude the May 7, 2021 order granting in part Marshalls' motion to strike is reviewable.

## B. *Timeliness*

Next, we consider Marshalls' argument, asserted by way of cross-appeal, that the trial court erroneously overruled its demurrer. If LaCour's PAGA claims were untimely, we need not go on to consider his claim that the trial court erroneously limited him to pursuing claims that arose after November 17, 2020, which in turn was the basis for its ruling that he had no

---

intended only to appeal the order granting Marshalls' motion for judgment on the pleadings, not the judgment itself.

[3] "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from . . . ." (Code Civ. Proc., § 906.)

6

standing to pursue this action at all.  So we will address Marshalls' cross-appeal first.

"We review a trial court's ruling on demurrer de novo [citation], giving ' "the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context.  [Citations.]  We deem to be true all material facts properly pled.  [Citation.]  We must also accept as true those facts that may be implied or inferred from those expressly alleged." ' "  (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 847.)

The statute of limitations under PAGA is one year from the date of the last violation.  (Code Civ. Proc., § 340, subd. (a); *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 59; *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 839.)  An alleged aggrieved employee cannot file a PAGA action until after the aggrieved employee exhausts PAGA remedies by filing a notice with the LWDA, and the statute of limitations is tolled up to 65 days to give the LWDA a chance to respond to the notice.  (Lab. Code, § 2699.3, subds. (a), (d).)

Marshalls argues that since LaCour's employment ended in May 2019, he had up to a year and 65 days to file his civil complaint (i.e., August 2020 at the latest), taking into account the 65-day tolling period.  From that premise, Marshalls contends, this action is time-barred because LaCour did not file his PAGA notice with LWDA until November 4, 2020, and this action was not filed until January 4, 2021.

Marshalls acknowledges the trial court's ruling that, under Emergency Rule 9, issued by the Judicial Council (the Council), the PAGA statute of limitations was tolled from April 6, 2020 through October 30, 2020, which had the effect of extending his deadline to file with the LWDA his notice of a PAGA claim until November 24, 2020.  As the trial court saw things,

7

Emergency Rule 9 tolling pushed the deadline to file the complaint in this action into the latter part of January 2021. Marshalls now challenges the trial court's tolling analysis on the ground Emergency Rule 9 is both "unconstitutional and prohibited by statute."

We reject the challenge.

On March 4, 2020, in the midst of a rapidly unfolding civil crisis across the state, Governor Newsom issued a proclamation under the California Emergency Services Act (CESA) (Gov. Code, §§ 8567, 8571, 8627), a statutory scheme charging him with the responsibility to provide a coordinated response to emergencies. Noting the initial outbreak of COVID-19 in Wuhan, China, and the speed with which the virus was spreading globally, he declared that "the conditions of Government Code section 8558(b)"—which defines a "State of Emergency"—had been met.[4]

Within eight days of this initial proclamation, Governor Newsom issued Executive Order N-25-20 (March 12, 2020), directed to various executive branch agencies and county and local governments. Executive Order N-25-20 granted certain kinds of emergency authority, such as the power to suspend in-person meeting requirements under the Bagley-Keene Act and the conferral of power to "commandeer property" such as "hotels and other places of temporary

---

[4] A "[s]tate of emergency," consists of a "duly proclaimed existence of conditions of disaster or of extreme peril to the safety of persons and property within the state caused by conditions such as air pollution, fire, flood, storm, epidemic, riot, drought, cyberterrorism, sudden and severe energy shortage, electromagnetic pulse attack, plant or animal infestation or disease, the Governor's warning of an earthquake or volcanic prediction, or an earthquake, or other conditions." (Gov. Code, § 8558, subd. (b).) It excludes conditions resulting from a labor controversy or conditions causing a state of war emergency. (*Ibid*.)

8

residence, medical facilities, and other facilities that are suitable for use . . . [to] quaratin[e], isolate[e] or treat individuals who test positive for COVID-19."

Soon thereafter, Governor Newsom turned his attention to the judiciary. On March 27, 2020, he issued Executive Order N-38-20, specifically for the purpose of giving "the Judicial Council and its Chairperson[5] maximum flexibility to adopt any rules concerning civil or criminal practice or procedure they may deem necessary to respond to the COVID-19 pandemic, while ensuring that the rules adopted 'shall not be inconsistent with statute,' as provided in Article VI, section 6 of the California Constitution."

Executive Order N-38-20 provided in relevant part as follows: "In the event that the . . . Council or its Chairperson, in the exercise of rulemaking authority consistent with Paragraph 2, wishes to consider a rule that would otherwise be inconsistent with any statute concerning civil or criminal practice or procedure, the relevant statute is suspended . . . [¶] (a) . . . to the extent it is inconsistent with the proposed rule."

Acting in parallel with the Governor, the Council took a series of steps to ensure courts would remain open and functioning during the COVID-19 crisis. Among them was Emergency Rule 9, adopted on April 6, 2020. Emergency Rule 9 provided as follows: "Notwithstanding any other law, the

---

[5] The Judicial Council was created in 1926 by a constitutional amendment (now Cal. Const., art. VI, § 6, former art. VI, § 1a) and is chaired by the Chief Justice of California. By constitutional charge, the Council is empowered to adopt rules for court administration, practice and procedure not "inconsistent with statute." (Cal. Const., art. VI, § 6, subd. (d); see *Cantillon v. Superior Court* (1957) 150 Cal.App.2d 184, 187; *Paul D. v. Superior Court* (1984) 158 Cal.App.3d 838, 841 [unless rules "transcend legislative enactments," they "have the force of law"].)

9

statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." (Emergency Rule 9, subd. (a).) By its terms, this rule was "intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action." (*Id.*, Advisory Committee Comment.)

LaCour argues that, in passing Emergency Rule 9, the Council was fully authorized to act and that Emergency Rule 9 passes constitutional muster. First, he points out that Emergency Rule No. 9 was enacted pursuant to Governor Newsom's Executive Order N-38-20, which empowered the Council to set rules in order to address problems caused by the COVID-19 pandemic. And in *Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1113 (*Newsom*), a Third District Court of Appeal panel not only interpreted Government Code section 8627 to confer emergency lawmaking authority on the Governor co-extensive with the Legislature's police power, but held that that delegation was constitutional.

Second, without regard to Executive Order N-38-20, LaCour argues that Government Code section 68115, subdivision (a)(4) allows the Chairperson of the Judicial Council, during a time of "war, insurrection, pestilence, or other public calamity," to "declare that a date or dates on which an emergency condition, as described in this section, substantially interfered with the public's ability to file papers in a court facility or facilities be deemed a holiday for purposes of computing the time for filing papers with the court under sections 12 and 12a of the Code of Civil Procedure."

We need not address the argument that the Council had independent authority to promulgate Emergency Rule 9 under Government Code 68115, subdivision (a)(4), because we agree that Executive Order N-38-20 authorized the promulgation of Emergency Rule 9 and is constitutional.

10

In attacking Executive Order N-38-20, Marshalls reads the California Emergency Services Act (CESA) (Gov. Code, § 8550 et seq.) too narrowly. According to Marshalls, the language in Government Code section 8571 empowering the Governor to the suspend "any regulatory statute, or statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency" pertains only to "state agenc[ies]." Marshalls then points out, quite correctly, that the Council is not a "state agency."[6]

But this argument rests on a false premise. Government Code section 8571 extends to "statute[s] prescribing the procedure for conduct of state business"—"*or*"—"the orders, rules, or regulations of any state agency." (Italics added.) We see no ambiguity here. The plain statutory terms, correctly parsed, permit the temporary suspension of statutes governing "procedure for the conduct of state business." And since the business of courts is necessarily state business, the Governor's emergency power to suspend statutes extends to rules of court procedure. Now, the Governor may also suspend "orders, rules or regulations of any state agency" under Government Code section 8571; and since "agencies" are always governed by statute at some level, there may be some overlap between the "state agency" and "state business" clauses. But the disjunctive phrasing of the statute creates two different fonts of authority.

On the deeper question of Executive Order N-38-20's constitutionality, Marshalls points out that we need not follow *Newsom*, which of course is true where we have "good reason" to conclude a sister court erred. (*Greyhound*

---

[6] A "state agency" is defined by statute as "any department, division, independent establishment, or agency of the executive branch of the state government." (Gov. Code, § 8557.)

*Lines, Inc. v. County of Santa Clara* (1986) 187 Cal.App.3d 480, 485 ["We respect stare decisis, . . . which serves the important goals of stability in the law and predictability of decision.  Thus, we ordinarily follow the decisions of other districts without good reason to disagree."].)  But we think *Newsom* is soundly reasoned.  We agree that "section 8627 giving the executive the state's 'police power,' i.e., quasi-legislative power, in an emergency" does not "violate the constitutional separation of powers by delegating such authority to the Governor."  (*Newsom*, *supra*, 63 Cal.App.5th at pp. 1113–1114.)

Marshalls argues, alternatively, that *Newsom* addressed the broad question whether CESA grants to the Governor any power to "make or amend statutes," a power which can only be exercised by the Legislature under our tripartite scheme of Government.  The question raised here is narrower, Marshalls contends.  If we were to recognize an open-ended gubernatorial power to "suspend" statutes, Marshalls argues, we would be sanctioning an "arbitrary exercise" of quasi-legislative power.  We acknowledge the seriousness of the argument, but reject it.

Marshalls urges us to invoke the principle that, when a statute can be interpreted in two different ways, one of which is constitutional, one of which may not be, the path of sure constitutionality should be chosen.  With that idea, we have no quarrel.  But it applies where there is genuine ambiguity, and here we have none, at least not on this record.  The Governor's CESA powers are definitionally confined to circumstances in which the state faces " 'conditions of . . . extreme peril to life, property, and the resources of the state' " must be deployed "so as to 'mitigate the effects' " of the emergency. (*California Correctional Peace Officers Assn. v. Schwarzenegger* (2008) 163 Cal.App.4th 802, 811–825.)

12

No one questions in this case whether those conditions were met. We can certainly imagine cases at the margins where a particular application of the Governor's CESA powers goes beyond what may be necessary to "mitigate the effects" of the declared emergency—a matter on which, were it properly raised, we would owe the Governor considerable deference in the absence of some demonstrated infringement of constitutional freedoms—but this is not a close case.

Marshalls concedes that, in April 2020, a 35-day reprieve from the otherwise applicable PAGA limitations period would have been valid and constitutionally permissible under the Council's independent authority pursuant to Government Code section 68115, subdivision (a)(4). Boiled down to its essence, then, Marshalls' complaint is that, in authorizing the Council to adopt a longer suspension period of several months, the Governor acted arbitrarily. Given the prevailing circumstances the Governor found Californians were facing in March and April 2020, we have no trouble disagreeing.

As the trial courts began to reopen in the late Spring of 2020, criminal cases and other cases having statutory priority deservedly ranked ahead of the general run of non-preference civil cases on their dockets. If for no reason other than to slow down the flow of newly filed civil cases during that period so that priority cases could be handled more easily, extending limitations periods out for several months made sense. Since, at the time, no one could predict how long the COVID-19 crisis would last, we see nothing arbitrary about the Governor's and Council's actions.

## C. *Claim Preclusion*

We now turn to the merits of the trial court's order granting in part Marshalls' motion to strike. LaCour contends that the trial court erred by giving res judicata effect to the federal district court's *Rodriguez* judgment,

and alternatively that even if that judgment was entitled to preclusive effect barring her PAGA claims for the period of time covered by the *Rodriguez* release (December 27, 2017 through November 17, 2020), the court erred in granting Marshalls' motion for judgment on the pleadings for lack of standing. We will vacate as moot the order granting judgment on the pleadings. We need not reach the issue of standing because we agree the trial court erred in giving claim preclusive effect to the *Rodriguez* judgment.

### 1. Principles of Res Judicata

"We review a dismissal on grounds of res judicata de novo as an issue of law. [Citation.] Res judicata—law Latin for 'a thing adjudicated'—is an umbrella term encompassing issue preclusion and claim preclusion, both of which describe the preclusive effect of a final judgment. As a general matter under the doctrine of claim preclusion, a final judgment on the merits bars parties or parties in privity from ' "successive litigation of the very same claim . . . as the earlier [action]." ' [Citation.] The driving principle behind the claim preclusion doctrine is that the parties have had a ' "full and fair opportunity to litigate" ' claims alleged in the first action." (*Guerrero v. Department of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1098 (*Guerrero*); see *Taylor v. Sturgell* (2008) 553 U.S. 880, 892 (*Taylor*).)

"Unlike issue preclusion, which applies only to issues that were actually litigated, claim preclusion applies not just to what was litigated, but more broadly to what could have been litigated. Here, under what is sometimes known as the rule against 'claim splitting,' the doctrines of bar and merger do the work. (See Rest.2d Judgments, § 24 (Second Restatement).) 'Merger' expresses the idea that, for a winning plaintiff, all claims the plaintiff did raise or could have raised merge into the judgment in his favor. (See *id*., § 18.) If the plaintiff attempts to litigate any of those claims again, the judgment itself serves as a defense. 'Bar,' on the other

14

hand, refers to the related idea that a judgment for a winning defendant bars the plaintiff from litigating any claims he brought or could have brought in the prior suit. (See *id.*, § 19.)" (*Guerrero, supra*, 28 Cal.App.5th at p. 1098.) This case involves the bar aspect of claim preclusion.

"The basic principles of claim preclusion are roughly the same under California and federal law, but there are some key differences. For example, while federal law defines a 'claim' for purposes of claim preclusion using a transactional test [*Mpoyo v. Litton Electro-Optical Systems* (9th Cir. 2005) 430 F.3d 985, 987], California law uses the older pleading term 'cause of action' and defines it according to the common law doctrine of primary rights. The more modern transactional approach has been adopted by the Second Restatement. (See Rest.2d Judgments, § 24.) Although . . . our high court ha[s] moved California law toward alignment with the overall approach to issue and claim preclusion in the Second Restatement, at least in the terminology we employ (see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*)), some features of California claim preclusion law remain distinctive. The primary rights doctrine is one such area. (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 804 (*Boeken*).)" (*Guerrero, supra,* 28 Cal.App.5th at p. 1099, fn. omitted.)

Adopting the same approach the trial court took, the parties analyze the claim preclusion issue presented in this case under the primary rights doctrine. Although that is the correct conclusion, in their briefs neither of the parties addresses why. When pressed to do so at oral argument, they agreed on why, and so do we: Because we are dealing with a federal judgment in a diversity case, federal common law governs (*Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497 (*Semtek)*), and under *Semtek* we apply "the law of the state where the judgment-issuing federal court sat, a holding

15

which effectively embeds [California] law into federal law unless some paramount federal interest calls for a departure from it." (*Guerrero, supra*, 28 Cal.App.5th at p. 1100; see *Semtek,* at p. 508.)[7]  There being no such federal interest in this PAGA case, California law applies.

California law is clear that "[a] dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91; see, e.g., *Boeken, supra*, 48 Cal.4th at p. 793 [citing cases]; *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 (*Citizens for Open Access*) [" ' "A judgment entered . . . by consent or stipulation, is as conclusive a . . . bar as a judgment rendered after trial." ' "].)  When an action is dismissed "with prejudice" following a settlement—a step known in the parlance of res judicata as "retraxit" (*Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820)—" '[t]he statutory term "with prejudice" clearly means the plaintiff's right of action is terminated and may not be revived. . . . [A] dismissal with prejudice . . . bars any future action on the same subject matter.' " (*Boeken, supra*, at p. 793.)

Under *Boeken*, the first issue we must address is the claim identity element of res judicata, which is where the primary rights doctrine comes into play.  Our Supreme Court has explained that a " ' "cause of action" is

---

[7] As we explained in *Guerrero, supra*, 28 Cal.App.5th at page 1100, "This aspect of *Semtek* is consistent with the conventional approach to conflict of laws in federal diversity cases."  (See *Semtek, supra*, 531 U.S. at pp. 508–509 [In diversity cases, "[s]ince state, rather than federal, substantive law is at issue [*Erie R. Co. v. Tompkins* (1938) 304 U.S. 64] there is no need for a uniform federal rule.  And . . . nationwide uniformity is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or a federal court. . . . Any other rule would produce the sort of 'forum shopping . . . and . . . inequitable administration of the laws' that *Erie* seeks to avoid."].)

based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken*, supra, 48 Cal.4th at p. 798.)

The second issue concerns "privity," a concept which extends the res judicata effect of a prior judgment beyond the parties to their nonparty privies. "As applied to questions of preclusion, privity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826.) Thus, we have recognized that in " ' "certain limited circumstances," ' a nonparty may be bound by a judgment because she was ' "adequately represented by someone with the same interests who [wa]s a party" ' to the suit. [Citation.] These circumstances include representative suits brought on a nonparty's behalf by an agent or proxy, such as this PAGA action." (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 89 (*Moniz*); see *Arias v. Superior Court* (2009) 46 Cal.4th 969, 986; *Taylor*, *supra*, at pp. 894–895; Rest.2d Judgments, § 41.)

Applying these principles, there are two key questions to decide. First, under the primary rights test, can we say that Paulino pleaded or could have pleaded the same claims that LaCour now seeks to pursue? Second, when

17

Paulino settled her PAGA claims in *Rodriguez*, was she acting in privity with LaCour? We conclude that the answer to both questions is no.

### 2. Identity of Claims

Looking at the operative complaint in *Rodriguez*, the only Labor Code violations embraced by the pleaded PAGA claims in that action focus narrowly on compensation for off-the-clock work during time employees spent undergoing an anti-theft bag check procedure at the end of their shifts. That is the "injury" Paulino allegedly suffered and the hook for her PAGA claim as an "aggrieved employee" on behalf of other Marshalls employees. While the claim preclusive effect of the *Rodriguez* judgment may extend beyond Paulino's pleaded claims to claims she could have brought if we were to define the "injury" suffered more broadly as her right to be free from any and all Labor Code violations in the course of her employment with Marshalls, one problem Marshalls faces in arguing for such broad preclusive effect is that Paulino's LWDA notice letter tracks her complaint. It, too, is limited to off-the-clock work at the end of shifts.

For us to say that, because Paulino "could have" alleged a broader set of PAGA claims in *Rodriguez*—encompassing the raft of additional wage-and-hour violations LaCour seeks to pursue in this case under the principle that they arise out of the same legal "injury"—and thus that the claim preclusive effect of the *Rodriguez* judgment bars this case, we would need proof that Paulino was deputized by the LWDA to file suit on the broader set of PAGA claims that LaCour subsequently brought. Nothing in the record shows that Paulino had that authority.

The requirement of pre-suit administrative exhaustion of PAGA claims is not particularly stringent, but it is not an empty formality either. Textually, the PAGA scheme is unmistakably clear on this point. "As a condition of suit, an aggrieved employee acting on behalf of the state and

18

other current or former employees must provide notice to the employer and the responsible state agency 'of the specific provisions of [the Labor Code] alleged to have been violated, *including the facts and theories to support the alleged violation.*' (Lab. Code, § 2699.3, subd. (a)(1)(A), [italics added]; *id.*, subd. (c)(1)(A)[same].)" (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 545.) Thus, for a PAGA plaintiff to obtain authorization to sue as a proxy for the state, she must provide notice to the LWDA of at least minimal "facts and theories" to support a proposed PAGA claim.

Without such a minimal showing, the LWDA, as the responsible enforcement agency, has no basis to determine whether it may wish to take direct enforcement action. "Put another way, 'something more than bare allegations of a Labor Code violation' is necessary to constitute adequate notice. [Citation.] Mere code section references with prose excerpting or rephrasing the statutory language are 'insufficient because they simply paraphrase[] the allegedly violated statutes.' [Citation.] Instead, 'the plain meaning' of the phrase ' "facts and theories to support [the] alleged violation" ' indicates that plaintiffs are 'required to put forward sufficient facts to support their claims of labor violations.' " (*Uribe v. Crown Building Maintenance Co.* (2021) 70 Cal.App.5th 986, 1004; see *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824.)

Because Paulino's LWDA notice letter identified nothing more than failure to compensate employees for off-the-clock work at the end of shifts, it is impossible to say she "could have" sued for other violations.[8] Whether she

---

[8] At oral argument before the trial court on Marshalls' motion to strike, LaCour emphasized the narrowness of Paulino's pleaded claims in *Rodriguez*, and in its order granting in part the motion to strike, the court noted that plaintiff Paulino's LWDA notice letter—which was attached to her

19

could have obtained broader authorization is pure speculation.  In analyzing the identity of claims requirement for claim preclusion, the trial court overlooked this problem by taking the view that "[w]here a claim has been settled, the scope of claim preclusion changes from a claim preclusion analysis of the 'harm suffered' to a contract analysis of the scope of the release."  That assumes the answer to the legal question at hand.  Rather than assess what was or could have been properly *pleaded* in *Rodriguez*, which was required in order to analyze the primary rights issue, the trial court focused on what was released.  The two inquiries are not the same.

There is a reason for the standard representation in virtually all settlement agreements that the settling parties are authorized to release claims specified in the release:  Contractually, no release is effective without party authority to effectuate it.  For the same reason, the underlying issue of LWDA authorization-to-sue is inextricably bound up with the identity of claims analysis here.  If she purports to settle PAGA claims that are not the subject of an adequate LWDA notice letter, a PAGA plaintiff exceeds her authority to act on behalf of the LWDA and to that extent cannot bind the LWDA to a judgment, at least not one that will have claim preclusive effect against a PAGA claimant authorized to litigate a broader set of PAGA claims.  By skipping over this issue, the trial court's focus on the scope of the *Rodriguez* release relieved Marshalls of the burden to show that Paulino actually pleaded or could have pleaded the same PAGA claims that LaCour now seeks to pursue.

---

complaint—in a footnote listed nine of the ten Labor Code sections on which LaCour's claims rest.  But her allegations focusing on off-the-clock work at the end of shifts supplied the only factual predicate for this laundry list of statutory citations.

True enough, as the trial court noted, any plaintiff can agree to a settlement release that is broader than the claims she pleaded or could have pleaded; and in the mine run of cases, where plaintiffs typically act on their own authority, that will generally be sufficient to give a judgment resting on such a release full preclusive effect. But in the PAGA context, where the interests of nonparties are implicated, we must proceed cautiously in analyzing res judicata. A settlement release exceeding the plaintiff's LWDA authorization will limit the claim preclusive effect of a judgment in binding nonparties, since it will prevent a defendant who later seeks to interpose a res judicata defense from meeting the identity of claims requirement necessary to trigger preclusion.

Arguing to the contrary, Marshalls relies heavily on language in *Moniz, supra,* 72 Cal.App.5th 56, where this court stated that "[t]aken together, PAGA's statutory scheme and the principles of preclusion allow, or 'authorize,' a PAGA plaintiff to bind the state to a judgment through litigation that could extinguish PAGA claims that were not specifically listed in the PAGA notice where those claims involve the same primary right litigated." (*Id.* at p. 83.) But Marshalls takes that language out of context. If a PAGA claimant's pre-suit notice, for example, fails to list a particular Labor Code section that might apply to the factual showing made in the claimant's LWDA notice, the notice would still be adequate to support a release of claims resting on that unlisted violation; the unlisted claim, in that scenario, would be nothing more than an alternative legal theory to justify recovery for the same injury. But that is not the case we have here. Because Paulino made *no* factual showing beyond her end-of-shift theory to support any of the various statutes on the menu of Labor Code sections she mentioned in a

21

footnote to her LWDA notice letter, we cannot say that the doctrine of claim preclusion applies.

We made no effort in *Moniz* to predict how far the primary rights doctrine might extend in the kind of case we have here, where the issue of res judicata is squarely presented, because the application of that doctrine always depends on the specific nature of the claim involved. Thus, we took care to emphasize there that we were "not addressing the preclusive effect of any settlement" in *Moniz*, "nor could we," because the "preclusive effect of a prior judgment is determined by the court in which it is asserted, not the court that rendered it." (*Moniz, supra,* 72 Cal.App.5th at p. 84.) This case, by contrast, arises from a ruling upholding a res judicata defense based on a judgment in a prior case. And on the record before us, where a PAGA claimant agreed to entry of judgment resolving a variety of claims for which she provided no factual basis to the LWDA—and thus failed to give LWDA an opportunity to investigate—we hold that the prior judgment does not extinguish unlisted PAGA claims in litigation brought by other authorized PAGA plaintiffs because such claims do not arise from violations of the same primary rights Paulino was authorized to pursue.

It is important to bear in mind the issue we were addressing in the passage from *Moniz* that Marshalls invokes. At issue there was the validity of a PAGA settlement releasing claims that were neither listed in the plaintiff's LWDA notice nor pleaded in the operative complaint. (*Moniz, supra,* 72 Cal.App.5th at p. 79–86.) We went on to hold that trial courts "should evaluate . . . PAGA settlement[s] to determine whether [they are] fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws." (*Moniz, supra,* 72 Cal.App.5th at p. 77.) Because a

PAGA claimant may settle a case with judicial approval of the settlement, we said, it is logical to expect "he or she is authorized to bind the state to a settlement releasing claims commensurate with those that would be barred by res judicata in a subsequent suit had the settling suit been litigated to judgment by the state." (*Id.* at p. 83.) But that logic is not inexorable under all circumstances. Even after the searching inquiry our holding in *Moniz* requires, it may be that, in a later case, a subsequent PAGA claimant will identify limitations on a prior settling PAGA claimant's authority that no one had any incentive to bring to the court's attention in the prior case.

Since " '[t]he burden of proving that the requirements for application of [claim preclusion] have been met is upon the party seeking to assert it as a bar or estoppel' " (*Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 40), a PAGA claimant facing a res judicata defense may always raise questions about whether that burden has been met. And while a prior, judicially approved settlement will generally provide prima facie proof sufficient to meet the defendant's burden, the imprimatur of judicial approval will not always be conclusive on the issue of res judicata. Where, as here, the record affirmatively shows that a settlement release extends beyond the plaintiff's authority to act on behalf of the LWDA, such a settlement will certainly bind the settling PAGA plaintiff by its literal terms, but any judgment entered pursuant to the settlement will have limited preclusive effect in binding non-parties.

### 3. Privity

"Our Supreme Court has recognized that: '[p]rivity is not susceptible of a neat definition, and determination of whether it exists is not a cut-and-dried exercise. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874; *Lynch v. Glass* (1975) 44 Cal.App.3d 943, 947.)' In the final analysis, the determination of privity depends upon the fairness of binding [a nonparty]

23

with the result obtained in earlier proceedings in which it did not participate." (*Citizens for Open Access*, *supra*, 60 Cal.App.4th at p. 1070.) Indeed, because extending the preclusive effect of a judgment to a nonparty runs up against the " 'deep-rooted historic tradition that everyone should have his own day in court' " (*Taylor*, *supra*, 553 U.S. at pp. 892–893) the privity requirement is compelled by due process (*id*. at p. 897.)  Basic fairness requires that " ' "the nonparty have had an identity or community of interest with, and adequate representation by, the . . . party in the first action." ' " (*Citizens for Open Access*, *supra*, 60 Cal. App.4th at p. 1070.)

To meet the shared interest requirement, a "nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's ' " 'virtual representative' " ' in the first action." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826; see *Hansberry v. Lee* (1940) 311 U.S. 32, 41–43; Rest.2d Judgments, § 42, subd. (1)(b)).)  But there is a notice component as well.  Not only must the shared interest requirement be met, but due process also requires that the nonparty " 'should reasonably have expected to be bound' " by the prior adjudication.  (*DKN Holdings*, at p. 826; see *Richards v. Jefferson County* (1996) 517 U.S. 793, 799–802.)  In short, we must be able to say *both* that another party acted as the nonparty's virtual representative in the first action *and* that the circumstances put the nonparty on notice he may be bound by the result there.

Applying these due process standards on this record, our privity analysis turns on the same issue that drives our analysis of the identity of claims element of res judicata.  A PAGA plaintiff's settlement of PAGA claims beyond the scope of her LWDA notice letter will rob a judgment founded on that settlement of res judicata effect, but here for a different reason:  An LWDA statutory proxy acting without authority cannot be said to

24

be in privity with her principal. In this case, as noted above, Paulino's LWDA notice was founded solely on a complaint about Labor Code violations for failure to pay employees for off-the-clock work at the end of shifts. But her settlement release in *Rodriguez*—and the preclusive effect Marshalls contends should attach to the *Rodriguez* judgment—is far broader than that. By agreeing to entry of judgment pursuant to a release exceeding Paulino's authorization to act as a proxy for LWDA, the *Rodriguez* settling parties ran the risk the judgment entered pursuant to their settlement would be found not to bind later claimants—such as LaCour—pursuing PAGA claims under different or broader LWDA authorization.

This case illustrates that risk quite well. The PAGA pre-suit LWDA notice requirement not only provides an objective source of proof for the scope of Paulino's authorized enforcement interest, but also puts subsequent PAGA claimants on notice—precisely—of the circumstances in which they should expect to be bound by another party's litigation efforts. Because Paulino was not authorized to pursue and settle claims in *Rodriguez* encompassing allegations beyond the "facts and theories" specified in her narrow pre-suit LWDA notice, we cannot say that she and LaCour shared an "identity or community of interest" to such an extent that LaCour had reasonable notice he may be bound as a nonparty privy and thus that his interests were adequately represented by Paulino in the prior case.

### 4. Issue Preclusion

We hold that res judicata does not apply in this case, but with an important caveat. Not only do LaCour's pleaded PAGA claims appear to encompass Paulino's more narrowly focused PAGA claims, but he received a share of the settlement proceeds in *Rodriguez* following approval of that settlement. He is not eligible for double payment on the same Labor Code violations Paulino pursued and resolved in *Rodriguez* within the scope of her

25

LWDA authority.  Thus, we emphasize that our res judicata holding leaves open the question of issue preclusion.  (See *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1326.)  We have no occasion to address the question of issue preclusion, however, because Marshalls' motion to strike and the trial court's ruling on that motion was based on claim preclusion.  We therefore limit our holding to claim preclusion, and express no view of the issue preclusive effect of the *Rodriguez* judgment.

## III. DISPOSITION

The judgment entered in favor of Marshalls and the order granting in part Marshalls' motion to strike are reversed.  The order granting judgment on the pleadings is vacated as moot.  The order overruling Marshalls' demurrer is affirmed.  Costs on appeal are awarded to LaCour.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

Trial Court:        Superior Court of California, County of Alameda

Trial Judges:       Hon. Brad Seligman and Hon. Winifred Y. Smith

Counsel:            Setareh Law Group, Shaun Setareh and Thomas Segal for
                    Plaintiff, Cross-defendant and Appellant

                    Littler Mendelson, Bradley E. Schwan, Janine Kranz and
                    Brittany L. McCarthy for Defendants, Cross-
                    complainants and Appellants.

*LaCour v. Marshalls of CA, LLC et al.* – A163920